## ALEJANDRINO *v.* QUEZON ET AL.

CERTIORARI TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 309. Submitted May 4, 1926.—Decided June 7, 1926.

1. The Jurisdictional Act of September 6, 1916, repealed the provision of the Philippine Autonomy Act giving this Court jurisdiction to review by writ of error the final judgments of the Supreme Court of the Philippine Islands in cases involving the Constitution, or any statute, treaty, title, or privilege of the United States or where the value in controversy exceeds $25,000, and substituted a review of such judgments by certiorari. P. 529.

2. The questions whether a member of the Philippine Senate appointed by the Governor General under the Autonomy Act, could be suspended by the elected members, and whether, if their action were invalid, the Supreme Court of the Islands, in this suit against

those members, had jurisdiction to require them, by mandamus or injunction, to re-admit him as an active member, became moot in this case, owing to the expiration of the period of suspension; and no other question being involved save the incidental one of the petitioner's right to recover unpaid salary during the period of suspension, and that being an issue concerning which the present petition fails to furnish sufficient information to enable the court in any event to afford a remedy, and one, furthermore, which would properly be tried in a separate proceeding against some executive officer or officers charged with the ministerial duty of paying such salary,—the cause as a whole must be treated as moot; and, following the established practice of this Court, the judgment below, dismissing the petition for want of jurisdiction, is vacated, and the cause remanded with directions to dismiss the petition, without costs. P. 532.

CERTIORARI to a judgment of the Supreme Court of the Philippines dismissing, for want of jurisdiction, an original proceeding, for injunction and mandamus, brought by an appointed member of the Senate of the Islands, against its twenty-two elected members, including its President, and its Secretary, its Sergeant at Arms and its Paymaster, in which the petitioner challenged the validity of a resolution of the Senate suspending him from the prerogatives, privileges, and emoluments of his office during one year from January 1st, 1924, and sought to have it set aside and recognition of his rights as Senator enforced. The judgment below was entered on September 22, 1924.

*Mr. Claro M. Recto* for petitioner.

No appearance for respondents.

MR. CHIEF JUSTICE TAFT prepared the opinion of the Court.[1]

This cause was brought here by certiorari under § 5 of the Act of September 6, 1916, to amend the Judicial Code,

---

[1] The opinion was announced by MR. JUSTICE HOLMES, the CHIEF JUSTICE being absent.

9542°—26——34

c. 448, 39 Stat. 726. That Act repealed § 248 of the
Judicial Code, re-enacted by § 27 of the so-called Philip-
pine Autonomy Act, c. 416, 39 Stat. 545, 555, which gave
jurisdiction to this Court to examine by writ of error the
final judgments and decrees of the Supreme Court of the
Islands in all cases in which the Constitution or any stat-
ute, treaty, title or privilege of the United States, was
involved, or in cases in which the value in controversy
exceeded $25,000; and a review of such judgments by
writ of certiorari was substituted. The certiorari here
was granted because a statute of the United States, to
wit, the Autonomy Act, was involved.

This proceeding was an original action in the Supreme
Court of the Philippines, brought by José Alejandrino,
a Senator appointed by the Governor General, seeking a
mandamus and an injunction against the twenty-two
elected members of the Senate, including its President, its
Secretary, its Sergeant at Arms, and its Paymaster. The
occasion for the proceeding was a resolution of the Senate,
passed February 5, 1924, and reading as follows:

"Resolved: That the Honorable José Alejandrino,
Senator from the Twelfth District, be, and he is hereby,
declared guilty of disorderly conduct and flagrant viola-
tion of the privileges of the Senate for having treach-
erously assaulted the Honorable Vicente de Vera, Senator
for the Sixth District, on the occasion of certain phrases
being uttered by the latter in the course of the debate
regarding the credentials of said Mr. Alejandrino.

"Resolved further: That the Honorable José Alejan-
drino be, and he is hereby, deprived of all of his pre-
rogatives, privileges and emoluments as such Senator
during one year from the first of January, nineteen hun-
dred and twenty-four;

"And resolved, lastly: That the said Honorable José
Alejandrino being a Senator appointed by the Governor
General of these Islands, a copy of this resolution be fur-
nished said Governor-General for his information."

· The petitioner charged that this resolution was unconstitutional and of no effect and asked a preliminary injunction against the respondents enjoining them from executing the resolution, a judicial declaration that it was null and void, and a final order of mandamus against the respondents, ordering them to recognize the rights of the petitioner and his office as Senator, and all of his prerogatives, privileges and emoluments, and prohibiting them from carrying the order of suspension into effect. The respondents made a special appearance through the Attorney General and objected on demurrer to the court's jurisdiction. The court held that it was without jurisdiction, sustained the demurrer, and, as it did not appear that the petition could be amended so as to state a cause of action, it was dismissed without costs.

José Alejandrino was appointed under the Philippine Autonomy Act, by the Governor-General, a Senator to represent the Twelfth District—a district composed of non-Christian tribes in the northern part of Luzon and the Moros in the Department of Mindanao and Sulu. At the time he took his seat in the Senate, another Senator, Vicente de Vera, made a speech on the credentials of Senator Alejandrino in which he said some things which Alejandrino resented. At night, and after the session of the Senate concluded, and away from the Senate chamber, Alejandrino assaulted de Vera because of his remarks made in the Senate. The resolution complained of was because of this assault.

By § 12 of the Autonomy Act, the general legislative powers in the Philippines, with certain exceptions, are vested in a Legislature consisting of two Houses—the Senate and the House of Representatives. The Senate is composed of twenty-four members from twelve Senate districts. Twenty-two of them are elected; and one district, the Twelfth, already referred to, has two Senators,

appointed by the Governor General. By § 17, a Senator appointed by the Governor General holds office until removed by the Governor General. Section 18 provides that the Senate and House respectively shall be the sole judges of the elections, returns and qualifications of their elective members, and each House may determine the rules of its proceedings, punish its members for disorderly behavior, and with the concurrence of two-thirds expel an elective member. The Senators and Representatives shall receive an annual compensation for their services to be ascertained by law and paid out of the Treasury of the Philippine Islands. Senators and Representatives shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

It is argued that, as the only power of expulsion given to the Senate is in respect of its elected members, no power is conferred on the Senate to expel a member appointed by the Governor General. It is further argued that the power to suspend is only a less power than the power to expel and of the same character, and therefore that the Senate had no power to suspend an appointed Senator, and therefore that the Senate exceeded its authority in attempting to do so in this resolution, and its action was null.

We do not think that we can consider this question, for the reason that the period of suspension fixed in the resolution has expired, and, so far as we are advised, Alejandrino is now exercising his functions as a member of the Senate. It is therefore in this Court a moot question whether lawfully he could be suspended in the way in which he was. Equally so is the still more important question whether the Supreme Court of the Philippines

had any jurisdiction by extraordinary writ of mandamus or injunction to require the Senate—a part of the Island Legislature, and a separate branch of the Government—to rescind its resolution and to re-admit Alejandrino to the Senate as an active member.

It may be suggested, as an objection to our vacating the action of the court below, and directing the dismissal of the petition as having become a moot case, that, while the lapse of time has made unnecessary and futile a writ of mandamus to restore Senator Alejandrino to the Island Senate, there still remains a right on his part to the recovery of his emoluments, which were withheld during his suspension, and that we ought to retain the case for the purpose of determining whether he may not have a mandamus for this purpose. We are not advised from his petition what the emoluments of his office during that period would be, except his salary. We infer from the averment of his petition that, as the suspension was in part retroactive, he was not paid what was due him during the month of January, 1924. It is difficult for the Court to deal with this feature of the case, which is really only a mere incident to the main question made in the petition and considered in the able and extended brief of counsel for the petitioner, and the only brief before us. That brief is not in any part of it directed to the subject of emoluments, nor does it refer us to any statute or to the rules of the Senate by which the method of paying Senators' salaries is provided, or in a definite way describe the duties of the officer or officers or committee charged with the ministerial function of paying them. The petition, in describing the defendants, avers that certain of them, being Senators, " are besides members of the Committee on Accounts of the Senate who approve the payment of emoluments that Senators are entitled to receive." Section 7 of the petition is as follows:

" That the defendants, in the respective capacities in which they are sued, attempt to comply with, execute and

carry into effect, or to cause to be complied with, executed and carried into effect, the suspension of the plaintiff depriving him, during the period of one year, of the exercise of his office and of all of his prerogatives, privileges and emoluments as Senator, as said defendant Senators and their President do not recognize the plaintiff's right to exercise such office and prevent him from exercising same, and cause all the officers, employes and other subordinates of the Senate not to recognize the plaintiff as Senator and to prevent him from exercising his office and enjoying his prerogatives, privileges and emoluments, and the President of the Senate, moreover, gives the necessary orders for the carrying into effect of said order of suspension, and the other defendants Faustino Aguilar and Bernabe Bustamente execute and comply with the orders and restrictions of the Senate and its President in order that the plaintiff may not be recognized as Senator and may not exercise his prerogatives and privileges as such Senator in the Senate building, and the defendant Francisco Dayaw, Official Paymaster of the Senate, requires him to refund his emoluments received corresponding to the period that has already elapsed from January 1st of this year and refuses to pay the emoluments to which the plaintiff is entitled."

We must assume, in view of the injunction of Congress in the Autonomy Act, that Senators shall receive an annual compensation to be fixed by law, that there is some official or board charged with the executive and ministerial duty of paying the senatorial salaries against whom a Senator entitled might procure a mandamus to compel payment. But the averments of the petition do not set out with sufficient clearness who that official or set of officials may be. Were that set out, the remedy of the Senator would seem to be by mandamus to compel such official in the discharge of his ministerial duty to pay him the salary due, and the presence of the Senate

as a party would be unnecessary. Should that official rely upon the resolution of the Senate as a reason for refusing to comply with his duty to pay Senators, the validity of such a defense and the validity of the resolution might become a judicial question affecting the personal right of the complaining Senator, properly to be disposed of in such action, but not requiring the presence of the Senate as a party for its adjudication. The right of the petitioner to his salary does not therefore involve the very serious issue raised in this petition as to the power of the Philippine Supreme Court to compel by mandamus one of the two legislative bodies constituting the legislative branch of the Government to rescind a resolution adopted by it in asserted lawful discipline of one of its members, for disorder and breach of privilege. We think, now that the main question as to the validity of the suspension has become moot, the incidental issue as to the remedy which the suspended Senator may have in recovery of his emoluments, if illegally withheld, should properly be tried in a separate proceeding against an executive officer or officers as described. As we are not able to derive from the petition sufficient information upon which properly to afford such a remedy, we must treat the whole cause as moot and act accordingly. This action on our part of course is without prejudice to a suit by Senator Alejandrino against the proper executive officer or committee by way of mandamus or otherwise to obtain payment of the salary which may have been unlawfully withheld from him.

The case having become moot as respects its main features, and the other feature being incidental and not in itself a proper subject for determination as now presented, further steps looking to an adjudication of the cause can neither be had here nor in the court below. In this situation we must, following the established practice of this Court, vacate the judgment below and remand.

the cause with directions to dismiss the petition without costs to either party. *Public Utility Commissioners* v. *Compania General De Tabacos De Filipinas,* 249 U. S. 425; *Brownlow* v. *Schwartz,* 261 U. S. 216, and cases cited.

> *Judgment vacated with directions to dismiss petition without costs to either party.*