**ACHESON, Secretary of State, v. DROESSE.**

No. 11004.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 6, 1951.

Decided Jan. 10, 1952.

Joseph F. Goetten, Washington, D. C., for appellant. George Morris Fay, U. S. Atty. at the time of argument, and Charles M. Irelan, appointed U. S. Atty. subsequent to the argument, Joseph M. Howard and L. Clark Ewing, Asst. U. S. Atty., also entered appearances for appellant.

Raoul Berger, Washington, D. C., for appellee. George F. Shea, Washington, D. C., also entered an appearance for appellee.

Before STEPHENS, Chief Judge, and CLARK and WILBUR K. MILLER, Circuit Judges.

STEPHENS, Chief Justice.

The appellee, Mrs. Clara Raffloer Droesse, was a native-born citizen of the United States. She married—apparently prior to the Act of September 22, 1922, 42 Stat. 1021, Ch. 411—a German national and thereby lost her citizenship.[1] Thereafter, by virtue of her husband's death and the taking of an oath of allegiance to the United States, Mrs. Droesse regained her citizenship under the Act of June 25, 1936, 49 Stat. 1917, Ch. 801. In 1946 Mrs. Droesse was in Germany and there voted for a mayoralty candidate in an election at the

---

1. By section 3 of the Act referred to in the text it is provided that loss of citizenship shall not result from the marriage of a citizen of the United States to an alien. Prior to that Act such a loss did occur. See the Act of March 2, 1907, 34 Stat. 1228, Ch. 2534, § 3.

village of Schoenau Berchtesgaden. The Nationality Act of October 14, 1940, 54 Stat. 1168, Ch. 4, of § 401(e), provides that a person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by voting in a political election in a "foreign state"; § 501 provides that whenever a diplomatic or consular officer of the United States has reason to believe that a person while in a "foreign state" has lost his American nationality under any provision of Chapter 4 of the Act, he shall certify the facts upon which such belief is based to the Department of State in writing, and that if the report of such officer is approved by the Secretary of State, a copy of the certificate shall be forwarded to the Department of Justice and to the person to whom it relates. On account of these provisions the appellant, the Secretary of State, issued a Certificate of Loss of Nationality by Mrs. Droesse. Thereafter Mrs. Droesse filed suit in the United States District Court for the District of Columbia against the Secretary of State. In her complaint she alleged the facts set forth above and also that at the time of the election referred to she was sixty-seven years of age and alone and acting under duress—it having been represented to her by the urgent and forceful pleas of her village neighbors that her vote was necessary to defeat a Communist candidate for mayor—and that she did not vote with the intent to adopt allegiance to Germany or to forsake her allegiance to the United States. Mrs. Droesse alleged further that at the time of the election the village of Schoenau Berchtesgaden was in the American Zone of Germany and that the supreme authority and control over that Zone and its inhabitants had been conferred by the Allies upon, and was being exercised by, the United States. She therefore contended that that part of Germany in which her vote was cast was not a "foreign state" within the meaning of § 401(e) and that the determination of the Secretary of State that she had lost her status as a citizen of the United States was accordingly without warrant of law. Mrs. Droesse prayed that judgment be entered declaring that she is a citizen of the United States.

The allegations thus made by Mrs. Droesse were admitted by the Secretary of State in his answer to her complaint except the allegations as to the purpose and manner of her voting and as to the village of Schoenau Berchtesgaden being located in the American Zone of Germany at the time of the election and as to the authority and control over that Zone by the United States. Those allegations the Secretary denied. The Secretary contended that Mrs. Droesse had expatriated herself, in view of the provisions of § 401(e), by voting in the election referred to.

The District Court, for reasons not apparent—but not here material in view of what appears below—ruled that there was no genuine issue of material fact in the case. It therefore rendered judgment on the pleadings. Its judgment was in Mrs. Droesse's favor and was in the following terms:

ORDERED that the Certificate of the Loss of Nationality of the United States issued by the Department of State and forwarded to plaintiff by the American Consulate General at Munich, Germany, be, and it hereby is, cancelled; and it is further

ORDERED, ADJUDGED AND DECREED that Clara Raffloer Droesse is, and she hereby is declared to be, a national of the United States.

From that judgment the Secretary of State took the present appeal.

Pending the appeal, Private Law 144, 82nd Congress, 1st Session, 65 Stat. A 55 (1951), was enacted, providing as follows:

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That, notwithstanding the provisions of section 401(e) of the Nationality Act of 1940, as amended, Mrs. Clara Raffloer Droesse shall be held and considered to have retained her United States citizenship.

By virtue of this Private Law the relief sought in Mrs. Droesse's complaint was accomplished. Therefore the case on appeal is moot. Dinsmore v. Southern Express Company, 183 U.S. 115, 22 S.Ct. 45, 46 L.Ed. 111 (1901). In respect of this there is no dispute.

The sole question arising upon the appeal is presented by virtue of a motion by Mrs. Droesse to dismiss the appeal as moot and

an opposition to this motion by the Secretary of State and a motion on his part to reverse and remand with directions to dismiss the complaint. There is, as said, no dispute as to the mootness of the case. The point of difference between the parties is that Mrs. Droesse contends that there should be a mere dismissal of the appeal, the judgment of the District Court to be left standing, whereas the Secretary contends that that judgment should be reversed or vacated and the complaint of Mrs. Droesse ordered dismissed.

In support of his contention the Secretary of State relies upon Securities and Exchange Commission v. Harrison, 340 U.S. 908, 71 S.Ct. 290, 95 L.Ed. 656 (1951); United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); United States v. Hamburg-Amerikanische Co., 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387 (1916). In the Munsingwear case the United States filed a complaint on two counts against Munsingwear alleging violations of a regulation fixing the maximum price of commodities which Munsingwear sold. The first count prayed for an injunction, the second sought treble damages. By agreement and a pre-trial order the second count was held in abeyance pending trial and final determination of the injunction count. A second action was brought by the United States against Munsingwear for treble damages for alleged violation of the same price regulation during the year subsequent to the period covered by the complaint in the first action. The second action, by agreement, was continued pending the outcome of the trial of the first or injunction count of the complaint in the first action. On the trial of that count the District Court ruled that Munsingwear's prices complied with the regulation and accordingly dismissed the case. The United States appealed from the judgment of dismissal to the Court of Appeals for the Eighth Circuit. While the appeal was pending the commodities involved were decontrolled. Munsingwear then moved to dismiss the appeal upon the ground that the case had become moot and the Court of Appeals granted that motion. Munsingwear then moved in the District Court to dismiss the treble damage counts in the two actions upon the ground that the unreversed judgment of the District Court on the injunction count in the first action was a bar, under the doctrine of res judicata, against prosecution of the treble damage count in that action and of the second treble damage suit. That motion was granted, the District Court directing the treble damage actions to be dismissed. On appeal the Court of Appeals, by divided vote, affirmed. [178 F.2d 204.] The Supreme Court granted certiorari in each of the two treble damage actions and affirmed the decision of the Court of Appeals, thus itself deciding that the unreversed judgment of the District Court in the injunction suit barred prosecution of the treble damage actions. It pointed out that the controversy in each of the suits concerned the proper pricing formula applicable to Munsingwear's commodities under the maximum price regulation and that that question was in issue and determined in the injunction suit and that the parties were the same both in that suit and in the actions for treble damages, and that there was no question but that the District Court in the injunction suit had jurisdiction both over the parties and the subject matter and that its judgment remained unmodified. The Supreme Court therefore ruled that the case fell squarely within the doctrine of res judicata and that the question whether Munsingwear had sold the commodities in violation of the federal regulation having been determined in the first suit was therefore laid at rest. The Supreme Court said:

"That is the result unless the dismissal of the appeal on the ground of mootness or the deprivation of the United States of any review of the case in the Court of Appeals warrant an exception to the established rule.

\* \* \*

"But we see no reason for creating the exception. If there is hardship in this case, it was preventable. The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direc-

tion to dismiss.[2] That was said in Duke Power Co. v. Greenwood County, 299 U.S. 259, 267 [57 S.Ct. 202, 81 L.Ed. 178], to be 'the duty of the appellate court.' That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary.

"In this case the United States made no motion to vacate the judgment. It acquiesced in the dismissal. It did not avail itself of the remedy it had to preserve its rights. Denial of a motion to vacate could bring the case here. Our supervisory power over the judgments of the lower federal courts is a broad one. See 28 U.S.C. § 2106, 28 U.S.C.A. § 2106, 62 Stat. 963; United States v. Hamburg-American Co., 239 U.S. 466, 478 [36 S.Ct. 212, 60 L.Ed. 387]; Walling v. Reuter Co., 321 U.S. 671, 676–677 [64 S.Ct. 205, 88 L.Ed. 432]. As already indicated, it is commonly utilized in precisely this situation to prevent a judgment,

unreviewable because of mootness, from spawning any legal consequences.

"The case is therefore one where the United States, having slept on its rights, now asks us to do what by orderly procedure it could have done for itself. The case illustrates not the hardship of *res judicata* but the need for it in providing terminal points for litigation."

We have stated this case and quoted from it at length because it is apparently intended by the Supreme Court to announce a rule for the guidance of the United States Courts of Appeals in disposing of cases which become moot pending appeal.

█ Counsel for Mrs. Droesse urges that the Munsingwear and Hamburg-Amerikanische cases involved a likelihood of future relitigation of the issues between the parties and that it was on that account that the Supreme Court ordered the lower

---

[2.] In footnote 2 in the opinion of the Supreme Court, the Court said:

"This has become the standard disposition in federal civil cases: New Orleans Flour Inspectors v. Glover, 161 U.S. 101, 103 [16 S.Ct. 492, 40 L.Ed. 632], modifying 160 U.S. 170 [16 S.Ct. 321, 40 L.Ed. 382]; United States v. Hamburg-American Co., 239 U.S. 466 [36 S.Ct. 212, 60 L.Ed. 387]; Berry v. Davis, 242 U.S. 468 [37 S.Ct. 208, 61 L.Ed. 441]; United States v. American-Asiatic Steamship Co., 242 U.S. 537 [37 S.Ct. 233, 61 L.Ed. 479]; Board of Public Utility Commissioners v. Compania General de Tabacos de Filipinas, 249 U.S. 425 [39 S.Ct. 332, 63 L.Ed. 687]; Commercial Cable Co. v. Burleson, 250 U.S. 360 [39 S.Ct. 512, 63 L.Ed. 1030]; United States v. Alaska Steamship Co., 253 U.S. 113 [40 S.Ct. 448, 64 L.Ed. 808]; Heitmuller v. Stokes, 256 U.S. 359, 41 S.Ct. 522, 65 L.Ed. 990; Atherton Mills v. Johnston, 259 U.S. 13 [42 S.Ct. 422, 66 L.Ed. 814]; Brownlow v. Schwartz, 261 U.S. 216 [43 S.Ct. 263, 67 L.Ed. 620]; Alejandrino v. Quezon, 271 U.S. 528 [46 S.Ct. 600, 70 L.Ed. 1071]; Norwegian Nitrogen Co. v. Tariff Commission, 274 U.S. 106 [47 S.Ct. 499, 71 L.Ed. 949]; United States v. Anchor Coal Co., 279 U.S. 812 [49 S.Ct. 262, 73 L.Ed. 971]; Sprunt & Son v. United States, 281 U.S. 249 [50 S.Ct. 315, 74 L.Ed. 832]; Hargis v. Bradford, 283 U.S. 781 [51 S.Ct. 342, 75 L.Ed. 1411]; Mahan v. Hume, 287 U.S. 575 [53 S.Ct. 223, 77 L.Ed. 505]; Railroad Commission of Texas v. Macmillan, 287 U.S. 576 [53 S.Ct. 223, 77 L.Ed. 505]; Coyne v. Prouty, 289 U.S. 704 [53 S.Ct. 658, 77 L.Ed. 1461]; First Union Trust & Savings Bank v. Consumers Co., 290 U.S. 585 [54 S.Ct. 61, 78 L.Ed. 517]; Danciger Oil & Refining Co. v. Smith, 290 U.S. 599 [54 S.Ct. 209, 78 L.Ed. 526]; O'Ryan v. Mills Novelty Co., 292 U.S. 609 [54 S.Ct. 779, 78 L.Ed. 1469]; Hammond Clock Co. v. Schiff, 293 U.S. 529 [55 S.Ct. 146, 79 L.Ed. 639]; Bracken v. S. E. C., 299 U.S. 504 [57 S.Ct. 18, 81 L.Ed. 374]; Leader v. Apex Hosiery Co., 302 U.S. 656 [58 S.Ct. 362, 82 L.Ed. 508]; Woodring v. Clarksburg-Columbus Short Route Bridge Co., 302 U.S. 658 [58 S.Ct. 365, 82 L.Ed. 509]; Retail Food Clerks & Managers Union v. Union Premier Food Stores, 308 U.S. 526 [60 S.Ct. 376, 84 L.Ed. 445]; S. E. C. v. Long Island Lighting Co., 325 U.S. 833 [65 S.Ct. 1085, 89 L.Ed. 1961]; Montgomery Ward & Co. v. United States, 326 U.S. 690 [66 S.Ct. 140, 90 L.Ed. 406]; Brotherhood of Locomotive Firemen & Enginemen v. Toledo, P. & W. R. Co., 332 U.S. 748 [68 S.Ct. 53, 92 L.Ed. 335]; S. E. C. v. Engineers Public Service Co., 332 U.S. 788 [68 S.Ct. 96, 92 L.Ed. 370]; Hodge v. Tulsa County Election Board, 335 U.S. 889 [69 S.Ct. 250, 93 L.Ed. 427]; S. E. C. v. Philadelphia Co., 337 U.S. 901 [69 S.Ct. 1047, 93 L.Ed. 1715].

"So far as federal civil cases are concerned, there are but few exceptions to this practice in recent years. See Cantos v. Styer, 329 U.S. 686 [67 S.Ct. 364, 91 L.Ed. 602]; Uyeki v. Styer, 329 U.S. 689 [67 S.Ct. 486, 91 L.Ed. 604]; Pan American Airways Corp. v. Grace & Co., 332 U.S. 827 [68 S.Ct. 203, 92 L.Ed. 401]; Schenley Distilling Corp. v. Anderson, 333 U.S. 878 [68 S.Ct. 914, 92 L.Ed. 1154]."

courts' judgments vacated [3] rather than merely dismissing the appeals, whereas the instant case involves no possibility of re-litigation of the issues between the parties because Private Law No. 144 gave final recognition to Mrs. Droesse's citizenship; counsel urges that the instant case is therefore exceptional and should be disposed of for mootness, not in the manner of disposition of the three cases cited, but by mere dismissal of the appeal. Assuming, without deciding, that there is no possibility of relitigation of the issue as to Mrs. Droesse's citizenship, we still cannot reach the result sought by her counsel. It is true that in the opinion in the Hamburg-Amerikanische case the possibility of further litigation arising was referred to; the court apparently had in mind that if the judgment in the moot case was not vacated, it might prejudice such litigation. In the Munsingwear case there was, at the time the Court of Appeals had before it the motion to dismiss the appeal in the injunction suit as moot, other litigation pending, to wit, the treble damage suits; a trial of those suits would be barred by the judgment in the injunction suit unless that judgment was vacated—because the parties and issues were the same. Yet the Court of Appeals did not dismiss the appeal with directions to vacate the judgment of the District Court, it merely dismissed the appeal—presumably because the United States, as the Supreme Court later said, made no motion to vacate and acquiesced in the dismissal. But among the cases cited by the Supreme Court in the footnote above quoted there are instances in which there was no possibility of further litigation of the issue between the parties in the case on appeal even arising, and yet the Court ordered the lower court's judgment vacated. Berry v. Davis, 242 U.S. 468, 37 S.Ct. 208, 61 L.Ed. 441 (1917), Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923). We think the language of the Supreme Court in the Munsingwear case clearly directs the Courts of Appeals that in all civil cases in the United States courts which become moot pending appeal, and in which a motion to dismiss as moot is accompanied by a motion to direct that the judgment below be vacated, both motions should be granted.

Counsel for Mrs. Droesse cites Schenley Distilling Corp. v. Anderson, 333 U.S. 878, 68 S.Ct. 914, 92 L.Ed. 1154 (1948), Pan American Airways Corp. v. Grace & Co., 332 U.S. 82?, 68 S.Ct. 203, 92 L.Ed. 401 (1947), and Uyeki v. Styer, 329 U.S. 689, 67 S.Ct. 486, 91 L.Ed. 604 (1947), as moot cases in which, because there was no likelihood of further litigation between the parties on the same issues, the appellate tribunal merely dismissed the appeals, i. e., without directing that the lower courts' judgments be vacated. In the Schenley case a motion by the appellee to dismiss the appeal upon the ground of mootness was joined in by the appellant. There was no motion to vacate the judgment below. In the Pan American case all parties joined in the motion to dismiss writs of certiorari upon the ground that there was no longer any controversy between the parties. Again there was no motion to vacate the judgment below. In the Uyeki case the Supreme Court, acting apparently *sua sponte*, dismissed the writ of certiorari for the reason that case had become moot. Neither of the parties asked either for dismissal or for a vacating of the judgment below. These three decisions therefore lend no support to the contention of counsel for Mrs. Droesse.

▮ This appeal accordingly will be dismissed as moot and the case remanded to the District Court with directions to vacate its judgment.

3. As appears from the preceding statement in the text of the Munsingwear case, there was in that case a motion by Munsingwear in the Court of Appeals to dismiss the injunction suit as moot, but no motion by the United States to vacate the judgment of the District Court. The United States acquiesced in the dismissal. Therefore the judgment of the District Court was not vacated.