**AVIATION ENTERPRISES, INC.**

v.

**The Honorable Vern ORR, as Secretary of the United States Air Force,**

**Huff Leasing Company, Appellant,**

**Air Chaparral, Inc., Intervenor.**

No. 82–1243.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1982.

Decided Sept. 2, 1983.

---

Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 81–02497).

Reuben B. Robertson, III, Washington, D.C., with whom Susan M. Duchek, Washington, D.C., was on the brief, for appellant, and also entered an appearance for intervenor Air Chaparral, Inc.

David H. Cox, Washington, D.C., for appellee Aviation Enterprises, Inc.

Judith Bartnoff, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., R. Craig Lawrence, Royce C. Lamberth and Cheryl M. Long, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees Orr et al.

Before ROBINSON, Chief Judge, WILKEY, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

Huff Leasing Company seeks to overturn a District Court order and accompanying opinion vacating an award of a military procurement contract to Huff Leasing by the Air Force. We find that a case or controversy between the parties no longer exists. Accordingly, we vacate the District Court's order and dismiss the appeal.

I

On July 22, 1981, the Air Force declined to exercise its option to renew a contract by which it had leased certain aircraft from Air Chaparral, Inc.[1] To replace the equipment supplied under the expired agreement, the Air Force invited bids on a new contract to lease three turboprop aircraft over a three-year period.[2] The first two

---

1. See Oral Solicitation Resume, IFB No. F26600–81–B0112 (Sept. 29, 1981), Joint Appendix (J.App.) 398.

2. See Amendment of Solicitation, IFB No. F26600–81–B0086 (July 22, 1981), J.App. 24.

invitations failed to elicit a suitable bid, but after a third solicitation the Air Force awarded the contract to Mitsubishi Aircraft International, Inc.[3] This selection was short-lived, however, as the District Court, at the behest of Aviation Enterprises, Inc.,[4] set aside the award on the ground that Mitsubishi was not a "small business" as required by the terms of the invitation.[5] The District Court accordingly ordered the Air Force to resolicit bids for the still outstanding contract.[6]

The Air Force complied with this order and, on October 28, 1981, issued another invitation—its fourth—for bids on the proposed leasing agreement.[7] Two weeks later, the Air Force awarded the contract to newly-formed Huff Leasing,[8] one of only two bidders, basing its selection on Huff Leasing's lower price and supposedly greater technical capability.[9] Aviation Enterprises, the lone disappointed bidder, then amended its earlier complaint and sought to enjoin performance of the contract on the grounds, first, that Huff Leasing was not a responsive bidder because it was not a "regular dealer" under the Walsh-Healy Act [10] and, second, that Huff Leasing was a

"sham entity" by which Air Chaparral had acquired the contract in circumvention of the "small business" requirement.[11] Aviation Enterprises also contended that it was the sole remaining qualified bidder and thus entitled to the contract.[12] After an abbreviated hearing, the District Court, on November 20, 1981, gave the Air Force four days within which to show cause why the contract should not be taken from Huff Leasing and awarded to Aviation Enterprises.[13] The Air Force responded to this call and, with Huff Leasing participating as intervenor,[14] the District Court held another, lengthier hearing on November 24, 1981, to explore the propriety of the selection of Huff Leasing.[15]

On the basis of evidence taken at these hearings, the District Court on November 25, 1981, vacated the award to Huff Leasing and ordered the Air Force to offer the contract to Aviation Enterprises.[16] In an accompanying opinion, the court justified its decision by a finding that the award to Huff Leasing was irrational because the firm was confronted by a conflict of interest in the matter, was a "sham entity," and

**3.** See Letter from Stephen J. Grenyo to Mitsubishi Aircraft International, Inc. (Oct. 5, 1981), J.App. 403.

**4.** See Complaint, filed Oct. 14, 1981, *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C.), J.App. 5.

**5.** *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C. Oct. 16, 1981) (order), J.App. 74, 74–75.

**6.** *Id.*, J.App. 76.

**7.** See Solicitation, RFP No. F26600–82–R0022 (Oct. 28, 1981), J.App. 98.

**8.** See Letter from Stephen J. Grenyo to Aviation Enterprises, Inc. (Nov. 12, 1981), J.App. 120. Huff Leasing had not bid when the previous three invitations were extended; it had been organized on October 1, 1981, see Amended Complaint, filed Nov. 18, 1981, *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C.) at 11, ¶ 48, J.App. 90, only in time to respond to the fourth solicitation. Air Chaparral, Huff Leasing's supplier, had submitted bids on each of the first two solicitations, see Brief for Plaintiff-Appellee at 7, but then withdrew from competition for the contract, see Brief for Appellant at 29.

**9.** See Letter from Stephen J. Grenyo to Aviation Enterprises, Inc. (Nov. 12, 1981), J.App. 120.

**10.** 41 U.S.C. §§ 35–45 (1976 & Supp. V 1981). The District Court apparently did not reach this question when later it vacated the award to Huff Leasing and directed the Air Force to offer the contract to Aviation Enterprises. See text *supra* at note 17.

**11.** See Amended Complaint, *supra* note 8, J.App. 80, 87–94.

**12.** *Id.*, J.App. 92.

**13.** See *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C. Nov. 20, 1981) (order), J.App. 198.

**14.** See *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C. Nov. 24, 1981) (order), J.App. 218.

**15.** A transcription of these proceedings is reprinted in part at J.App. 219–378.

**16.** *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C. Nov. 25, 1981) (order), J.App. 446.

had provided inadequate assurance that it would fulfill its contractual obligations.[17]

■ Uncomfortable with the announced contours of this resolution, Aviation Enterprises and the Air Force later moved jointly that the District Court delete from its opinion the language by which it had instructed the Air Force to offer the contract to Aviation Enterprises.[18] Concomitantly, these parties sought vacatur of the November 25 order and substitution of a new order identical to the old save for the direction to award the contract to Aviation Enterprises.[19] They also asked the court to enter a stipulation of settlement by which Aviation Enterprises promised not to seek attorneys' fees or bid-preparation costs in exchange for an agreement by the Air Force to award the contract to Aviation Enterprises and to forego any appeal from the court's order.[20] Acceding to these requests, the District Court on January 5, 1982, vacated its order and opinion of November 25, 1981,[21] issued a new order [22] and opinion [23] along the lines suggested by these two parties, and entered the stipulation of settlement.[24] Huff Leasing then took this appeal from the superseding order.[25]

Huff Leasing advances several arguments in support of its contention that the order should be set aside. It contends that the District Court erroneously determined that the award it secured lacked rational basis,[26] improperly allocated the burden of persuasion on that issue,[27] failed to heed the

---

17. *Id.* (opinion), J.App. 439.

18. See Joint Motion to Amend or Alter Judgment, filed Dec. 29, 1981, *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C.), J.App. 454.

19. *Id.*

20. *Id.;* see also Stipulation of Settlement, filed Dec. 29, 1981, *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C.), J.App. 458.

21. See *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C. Jan. 5, 1982) (order), J.App. 467.

22. *Id.*, J.App. 474. Inexplicably, this order recited its date of issue as Nov. 25, 1981. *Id.*

23. *Id.* (opinion), J.App. 468.

24. *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C. Jan. 5, 1982) (stipulation of settlement), J.App. 475.

25. Notice of Appeal, filed Mar. 5, 1982, *Aviation Enterprises, Inc. v. Orr*, No. 81–2497 (D.D.C.). It may be that the District Court's action on January 5, 1982—vacating in full yet at once partly reinstating its prior order—might better be regarded in the aggregate simply as a partial vacatur of that order. In this light, the order by which Huff Leasing is aggrieved—that which vacated the award to it—issued on November 25, 1981, not January 5, 1982. Because Huff Leasing filed its notice of appeal far beyond the 60-day period commencing November 25, 1981, pursuant to Federal Appellate Rule 4(a), it might seem superficially that Huff Leasing lost its appeal on this account. See Fed.R. App.P. 4(a). Upon closer inspection, however, it becomes clear that there is no cause for concern. Even if we were constrained to re-

gard the court's action on January 5, 1982, as effecting only a partial vacatur of its earlier order, a question we do not here decide, Huff Leasing's delayed filing of its notice of appeal is not fatal in this instance. Courts long have permitted parties to maintain otherwise untimely appeals in "unique circumstances"—those in which the appellant reasonably and in good faith relies upon judicial action seemingly extending the appeal period, provided that the court's action occurs prior to expiration of the official period and that the appellant files a notice of appeal before expiration of the period apparently judicially extended. See *Thompson v. Immigration & Naturalization Serv.*, 375 U.S. 384, 386–387, 84 S.Ct. 397, 398–399, 11 L.Ed.2d 404, 406–407 (1964); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261, 263 (1962); *Needham v. White Laboratories, Inc.*, 639 F.2d 394, 398 (7th Cir.), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981); *Webb v. Department of Health and Human Servs.*, 696 F.2d 101 (D.C.Cir.1982), at 105–106; 4 C. Wright & A. Miller, *Federal Practice* § 1168 (1969). The case at hand presents us with such "unique circumstances." Within 60 days the District Court purportedly vacated its initial order and simultaneously issued a superseding order, from which a new 60-day period ostensibly would begin to run. Huff Leasing then filed its notice of appeal before expiration of the new period, apparently in reliance upon actual extension thereof. Accordingly, even if the District Court's action on January 5, 1982, cannot in fact establish a new 60-day period under Rule 4(a), Huff Leasing's appeal is not to be dismissed for untimely filing.

26. See Brief for Appellant at 21–39.

27. See *id.* at 17–21.

doctrine of primary jurisdiction,[28] and impermissibly neglected to consider the important public interest in noninterference with sensitive military operations before it decided to vacate the award.[29] We do not reach the merits of any of these claims, however, because we find that this matter no longer presents a justiciable case or controversy.

## II

On this appeal, Huff Leasing asks only that we set aside the District Court's vacatur of the award to Huff Leasing and the court's opinion tendering its findings in support of its determination that the award was irrational. Huff Leasing's sole purpose in requesting that relief is to foreclose use of the court's judgment or the findings as res judicata and also thereby to protect its business reputation.[30] Both in brief [31] and oral argument, Huff Leasing has made clear that it does not seek reinstatement of its now-terminated contract with the Air Force, invalidation of the settlement agreement between Aviation Enterprises and the Air Force, or annulment of the contract

subsequently executed by those two parties pursuant to that agreement.

■ As a result, neither Aviation Enterprises nor the Air Force has any interest adverse to Huff Leasing's objective. The sole interest of each—the validity of the current contract—is in no way threatened by this appeal.[32] As the Supreme Court has emphasized, an essential component of a "case or controversy"—a jurisdictional prerequisite under Article III of the Constitution—is that the matter at hand "be definite and concrete, touching the legal relations of parties having adverse legal interests." [33] That adversity is lacking here. It follows that we are without authority to consider the merits of Huff Leasing's contentions.

■ This is not to say, however, that any party to this appeal need be dissatisfied with our ultimate disposition. It is well-settled doctrine that when a matter presented on appeal ceases to embody a case or controversy, it is "the duty of the

**28.** See *id.* at 41–44.

**29.** See *id.* at 39–41.

**30.** See Reply Brief for Appellant at 3–9.

**31.** *Id.*

**32.** In attempted rebuttal of the argument advanced by the Air Force that the appeal is moot, see Brief for Defendant-Appellee at 6–8, Huff Leasing has suggested, without corroborative documentation, that that Air Force might have an interest in preserving the efficacy of the District Court's factual findings as res judicata in ancillary proceedings to determine appropriate compensation for Huff Leasing under the now-terminated contract. See Reply Brief for Appellant at 7. If that were true, it conceivably might reveal sufficient adversity of interest to satisfy the case-or-controversy requirement of Article III of the Constitution. At oral argument, however, counsel for the Air Force several times represented that her client's sole interest was to protect the settlement agreement and the contract executed pursuant thereto. She also explicitly rejected the proposition that the District Court's order and the findings of fact challenged here bear any relevance to Huff Leasing's pending compensation claim. Indeed, she both suggested and

assented to disposition of Huff Leasing's appeal by vacatur of the District Court's order invalidating the award to Huff Leasing, which entailed nullification of the efficacy of the court's supportive findings of fact. In light of these unequivocal representations, we cannot conclude that the Air Force has a present interest in preserving the District Court's order and findings for use in Huff Leasing's compensation endeavor. Accordingly, we pretermit the question whether such an interest would establish the presence of a case or controversy sufficient to endow us with jurisdiction to decide Huff Leasing's claims on the merits.

**33.** *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413, 415 (1971) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621 (1937)); see also *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 382, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467, 475 (1980); *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895, 906 (1979); *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947, 958 (1968); *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072, 2076 (1945); *South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co.,* 145 U.S. 300, 301, 12 S.Ct. 921, 921, 36 L.Ed. 712, 712 (1892).

appellate court" [34] to dismiss the appeal and vacate the judgment appealed from.[35] Since this litigation no longer presents a "case or controversy," we take that course of action here.[36] We vacate the order of the District Court setting aside the contract award to Huff Leasing, thus draining the court's underlying findings of fact of whatever vitality they might otherwise have had for res judicata purposes.[37] This affords Huff Leasing precisely the kind of relief it wishes, yet at the same time protects the interests of Aviation Enterprises and the Air Force by leaving intact their settlement agreement and the contract they executed pursuant thereto.

*Judgment accordingly.*

**34.** *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178, 182 (1936).

**35.** *United States v. Munsingwear,* 340 U.S. 36, 39–41 & n. 2, 71 S.Ct. 104, 106–107 & n. 2, 95 L.Ed. 36, 40–42 & n. 2 (1950); see also *Great W. Sugar Co. v. Nelson,* 442 U.S. 92, 93, 99 S.Ct. 2149, 2149, 60 L.Ed.2d 735, 736 (1979); *Preiser v. Newkirk,* 422 U.S. 395, 403–404, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272, 279 (1975); *Duke Power Co. v. Greenwood County, supra* note 34, 299 U.S. at 267, 57 S.Ct. at 205, 81 L.Ed. at 182. See generally 13 C. Wright, A. Miller & E. Cooper, Federal Practice, § 3533 at 292–294 (1975). This court has long adhered to this doctrine. See, *e.g., Weaver v. UMWA,* 160 U.S.App.D.C. 314, 321 & n. 36, 492 F.2d 580, 587 & n. 36 (1973); *Cadillac Publishing Co. v. Summerfield,* 105 U.S.App.D.C. 343, 344, 267 F.2d 620, 621 (1958); *Dulles v. Nathan,* 96 U.S.App.D.C. 190, 192, 225 F.2d 29, 31 (1955); *Acheson v. Droesse,* 90 U.S.App.D.C. 143, 147, 197 F.2d 574, 578 (1952). Additionally, although the *doctrine typically has been applied* in litigation rendered moot pending appeal, its sphere of operation must extend more generally to include any matter that ceases to present a case or controversy while on appeal, regardless whether the matter technically may be characterized as moot.

**36.** Although in its briefs Huff Leasing did not seek that relief specifically, it did so at oral argument when, *in response to a query from* the bench whether a vacatur under the doctrine of *United States v. Munsingwear, supra* note 35, would be appropriate, its counsel stated "that's exactly what we're seeking."

**37.** We express no view as to whether the District Court's opinion may have precedential value in other litigation.