# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2015

Lyle W. Cayce
Clerk

No. 14-20523

ALLIED HOME MORTGAGE CORPORATION; JAMES C. HODGE,

Plaintiffs - Appellants

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT; JULIAN CASTRO, in his official capacity as Secretary of
Housing and Urban Development,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-3864

Before JOLLY and DENNIS, Circuit Judges, and RAMOS, District Judge.*

PER CURIAM:**

James C. Hodge and his company, Allied Home Mortgage Corporation, (collectively, "the appellants") petition the court to determine whether the Department of Housing and Urban Development ("HUD") acted unlawfully in temporarily suspending them from business with the government. During the

---

\* District Judge of the Southern District of Texas, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20523

pendency of the case, HUD withdrew the suspensions. We now hold that the case is moot and we therefore dismiss it.[1]

## I.

Under title II of the National Housing Act of 1934, HUD is authorized to insure participating mortgage lenders against loss on loans made to homebuyers. *See* 12 U.S.C. § 1709. If the borrower of a mortgage insured under title II defaults, HUD reimburses the lender for the amount still owed on the loan. Thus, under the title II insurance program, it is the government, not the lender, that bears the risk of default. The program is intended to promote mortgage lending and homeownership. During the period relevant to this case, the appellants participated in the title II program as lenders of government-insured mortgages.

At some point, the record is unclear when, the Department of Justice ("DOJ") opened an investigation into the appellants. Following the investigation, DOJ concluded that the appellants were responsible for serious, widespread and long-running violations of HUD rules and regulations. DOJ prepared a lawsuit and, before filing, communicated its findings to HUD. (Currently, the DOJ case is pending as *United States v. Allied Home Mortg. Corp.*, No. 4:12-CV-2676 (S.D. Tex.).) On November 1, 2011, HUD suspended the appellants from further business with it, effective immediately.[2] The suspensions were to be temporary, to last until the conclusion of the DOJ

---

[1] In addition to Allied Home Mortgage Corporation, Hodge also owned the similarly-named Allied Home Mortgage Capital Corporation. That company, however, is not a party to this litigation and, under our resolution of this appeal, is unnecessary to discuss further. We also note that, following the commencement of this case, Allied Home Mortgage Corporation changed its name to AllQuest Home Mortgage Corporation, and Allied Home Mortgage Capital Corporation changed its name to Americus Mortgage Corporation.

[2] We need not describe the misconduct DOJ found and HUD cited for the suspensions, as it is irrelevant to the mootness inquiry on which our decision is based.

2

No. 14-20523

lawsuit and debarment proceedings (used to bar a person from government business for a specified period).[3]

The following day, November 2, the appellants brought this lawsuit against HUD, seeking a declaration under the Administrative Procedure Act that the suspensions were unlawful and an injunction against enforcement of them. On November 15, the district court granted the appellants a preliminary injunction and ordered HUD to refrain from enforcing the suspensions pending final decision in the case. *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223 (S.D. Tex. 2011).

In May 2012, with the case still pending, HUD withdrew the original suspensions and issued two new notices to the appellants. With respect to Allied Home Mortgage Corporation, HUD stated that it was "considering taking an administrative action" against it for specified reasons, and the company was invited to respond. With respect to Hodge, HUD stated that it was proposing his debarment for a period of five years, to be imposed after further proceedings, and he, too, was invited to respond. Neither notice imposed a suspension pending further proceedings. HUD then moved the district court to dismiss the case as moot because the appellants were no longer suspended. The court declined. *Allied Home Mortg. Corp. v. Donovan*, No. 4:11-CV-3864, 2012 WL 3276978 (S.D. Tex. Aug. 8, 2012).[4]

On August 5, 2014, the district court reached its final decision and, contrary to the prior preliminary injunction, upheld the suspensions. *Allied*

---

[3] For HUD's debarment authority, see 42 U.S.C. § 3535(d) ("The Secretary . . . may make such rules and regulations as may be necessary to carry out his functions, powers, and duties."), 2 C.F.R. § 2424.10 ("HUD adopts, as HUD policies, procedures, and requirements for nonprocurement debarment and suspension, the OMB guidance in subparts A through I of 2 CFR part 180, as supplemented by this part."), and the regulatory provisions referenced therein.

[4] The court did, however, vacate the preliminary injunction. *Id*. at *6.

No. 14-20523

*Home Mortg. Corp. v. Donovan*, No. 4:11-CV-3864, 2014 WL 3843561 (S.D. Tex. Aug. 5, 2014).

This appeal followed.

## II.

### A.

Article III of the Constitution authorizes the federal courts to adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* at 727 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

Here, the appellants seek a declaration that HUD's suspensions of them were unlawful and invalid. But the suspensions have been withdrawn, and the appellants are no longer suspended from business with HUD.[5] The dispute in this case is therefore no longer embedded in an actual controversy about the appellants' legal rights. Absent an exception to the mootness doctrine, the case is moot and must be dismissed. *See Alejandrino v. Quezon*, 271 U.S. 528, 532 (1926) (challenge to suspension from government office moot after suspension concluded); *ITT Rayonier Inc. v. United States*, 651 F.2d 343 (5th Cir. Unit B

---

[5] The appellants take issue with HUD's description of the suspensions as having been "formally withdrawn." Their objection, however, is unclear. For their part, the appellants describe the suspensions as having been "effectively withdrawn" or simply "withdrawn." We see no meaningful distinction in the adverb choice. It is undisputed that the suspensions are not in effect.

No. 14-20523

1981) (same, suspension of eligibility for government contracting); *Westmoreland v. Nat'l Transp. Safety Bd.*, 833 F.2d 1461, 1463 (11th Cir. 1987) (same, license suspension); *Fed. Sav. & Loan Ins. Corp. v. Hykel*, 468 F.2d 1386, 1388 (3d Cir. 1972) (same, administrative suspension).

## B.

The appellants contend that the case is not moot under the voluntary-cessation doctrine. That rule holds that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC*, 133 S. Ct. at 727; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 133 S. Ct. at 727. Given that concern, once the defendant has ceased its challenged conduct, the plaintiff's challenge to such conduct is moot only if the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190). When the defendant is the government, however, its burden is lighter. We treat the government's cessation of allegedly wrongful conduct "with some solicitude" given that the government, unlike private litigants, is presumed to act in good faith. *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009); *accord Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 861 (3d Cir. 2012); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).

Here, HUD has represented that it will not reinstate the rescinded suspensions, and based on the circumstances of this case we believe it. The appellants have represented to the court that, as a result of the government's actions against them, their lines of credit dried up and their business was

5

No. 14-20523

"destroyed" and is now without employees or assets. The appellants claim that this is all the result of the temporary suspensions alone. That is doubtful, though. The suspensions aside, the DOJ's lawsuit is proceeding, as are HUD's additional administrative proceedings, and all charge the appellants with the same, or at least substantially similar, misconduct as the suspensions did. The suspensions were enjoined between November 15, 2011 and August 8, 2012, and credit did not return to the appellants during that period. (At least, the appellants have not stated or shown otherwise.) The reasonable inference, then, is that so long as HUD is charging the appellants with serious misconduct and a final determination is pending, the appellants will be in no position to resume mortgage lending, whether suspended as a legal matter or not. In such circumstances, HUD has nothing to gain by reinstating temporary suspensions pending final determination. And, of course, once final determination is reached, the issue will be settled, and there will be no possibility of HUD reinstating the preliminary suspensions. In these circumstances, we find it absolutely clear that there is no reasonable probability that the withdrawn suspensions will be reinstated.[6]

Even so, the appellants appear to argue that HUD may engage in unspecified subsequent administrative actions different than the suspensions at issue here. This argument misses the mark. The voluntary-cessation inquiry focuses on the potential for recurrence of the conduct challenged in the case or at least "sufficiently similar" conduct. *Ne. Fla. Chapter of Associated*

---

[6] The fact that HUD withdrew the suspensions only *after* the district court preliminarily enjoined them cuts against HUD's claim of permanent cessation. *Cf. Sossamon*, 560 F.3d at 325 ("The good faith nature of Texas's cessation is buttressed by the fact that Sossamon did not obtain relief below. Had the trial court granted the injunction, we might view any attempt to force a vacatur of such a determination (particularly in favor of a *pro se* prisoner) with a jaundiced eye."). Even so, we conclude based on the totality of the circumstances that there is no reasonable probability that the suspensions will be reinstated.

No. 14-20523

*Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993). The potential for a future dispute of another nature, presenting other issues, is immaterial.  Should such a subsequent dispute arise, it is a matter for another lawsuit, not a reason to keep this one alive.  *See Texas Office of Pub. Util. Counsel v. F.C.C.*, 183 F.3d 393, 414 (5th Cir. 1999) ("We cannot assume jurisdiction to decide a case on the ground that it is the *same* case as one presented to us, when it is admitted that it is not and when it presents different issues.") (citation omitted).  To the extent that the appellants seek to use *this* case, which until now has focused on the suspensions, as a vehicle to challenge HUD's debarment proceedings against Hodge and anticipated proceedings against Allied Home Mortgage Corporation, it is obvious that the issues are unripe.  We do not yet know what, if any, action HUD will take against the appellants following such proceedings, and it is impossible to anticipate upon what administrative record such action would be based and what justifications would be offered.  *See Hooker Chem. Co., Ruco Div. v. E.P.A.*, 642 F.2d 48 (3d Cir. 1981) (after agency withdrew challenged orders and reserved the right to take other enforcement action, case was unripe); *cf. Gulf Oil Corp. v. Simon*, 502 F.2d 1154 (Temp. Emer. Ct. App. 1974) (per curiam) (after challenged regulations superseded with new ones, case was moot, and challenge to new regulations should be brought in new case).

### C.

Next, the appellants invoke the collateral-consequences doctrine.  Under that rule, when the plaintiff's primary injury (here, the suspensions) has ceased, the case is not moot if the challenged conduct continues to cause other harm (*i.e.*, "collateral consequences") that the court is capable of preventing. *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citing *Sibron v. New York*, 392 U.S. 40, 53-59 (1968)).  The question is whether there is a continuing collateral consequence that provides the plaintiff with a "concrete

interest" in the case and for which "effective relief" is available. *Id.* (citing *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984)).

Here, the appellants appear to contend that the suspensions harmed their reputations, the harm was not remedied after the suspensions were withdrawn, and such continuing reputational harm is itself a collateral consequence that sustains the case as a live controversy. It is true, as the appellants note, that this court has denied mootness based on reputational harm before. *Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977). We will not do so here, however. Assuming without deciding that *Connell* remains good law, *cf. Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998), and accepting the appellants' claims that the withdrawn suspensions continue to harm their reputations, we nevertheless do not think that this court could remedy the harm. As described above, the suspensions aside, the appellants are charged with the same or substantially similar misconduct in other HUD administrative proceedings and the DOJ lawsuit. If the suspensions harmed the appellants' reputations, it is clear that the pending other proceedings do the same. To declare the withdrawn suspensions invalid, then, would not fix the harm; the other public and unresolved allegations of misconduct would continue to sustain the same reputational injury. Therefore, assuming that the withdrawn suspensions continue to cause reputational harm that provides the appellants with a concrete interest in the outcome of this case, we nevertheless conclude that effective relief is not available. *Accord Lebron v. Rumsfeld*, 670 F.3d 540, 562 (4th Cir. 2012) (because plaintiff had been convicted of terrorism crimes, designation as an "enemy combatant" did not cause sufficient additional stigmatic harm to suffice as an injury for standing).

Additionally, the appellants contend that two regulations, 2 C.F.R. § 180.860(c) and 24 C.F.R. § 202.5(j)(3) create collateral consequences that keep this case a live controversy. The former provides that in debarment

proceedings, the debarring official may consider "a pattern or prior history of wrongdoing." The latter provides that mortgage lenders are ineligible for approval as HUD-insured lenders if they are "subject to unresolved findings as a result of HUD or other governmental audit, investigation, or review." We disagree that either provision creates collateral consequences that keep this case a live controversy, for the reasons that follow.

2 C.F.R. § 180.860(c) addresses "wrongdoing." Apparently, the appellants fear that HUD will sometime in the future deem the withdrawn suspensions at issue in this case as evidence of the appellants' "wrongdoing." We, however, think this fear is speculative. Importantly, the appellants' historic conduct is at issue in the pending DOJ lawsuit and administrative proceedings, and in those proceedings, the appellants may or may not disprove the charge that their conduct was wrongful. The result of *those* proceedings, therefore, may or may not create a collateral consequence under § 180.860(c); but we see no basis for the withdrawn suspensions to have any bearing on the issue. The appellants have pointed to no precedent, and we have found none, for deeming withdrawn suspensions as evidence of "wrongdoing" under § 180.860(c). Because we conclude that the possibility of such is too speculative, we reject the argument that § 180.860(c) creates a collateral consequence that keeps this case a live controversy. *See generally ITT Rayonier Inc.*, 651 F.2d at 345 (the speculative potential for collateral consequences is insufficient to overcome mootness); *Bailey v. Southerland*, 821 F.2d 277 (5th Cir. 1987) (per curiam) (same).

24 C.F.R. § 202.5(j)(3) addresses "unresolved findings as a result of HUD or other governmental audit, investigation, or review." The appellants apparently fear that if we do not adjudicate the lawfulness of the withdrawn suspensions, then HUD's findings underlying those suspensions will be "unresolved," which will, under § 202.5(j)(3), preclude the appellants from

future approval for HUD-insured lending. This, too, we find speculative. The appellants have pointed to no precedent, and we have found none, for HUD rendering a case moot through its unilateral withdrawal of a lender's temporary suspension and then deeming the lender ineligible for insured lending on the basis of the resultant "unresolved findings." Because this, too, is speculative, we reject the argument that § 202.5(j)(3) creates a collateral consequence that keeps this case a live controversy. Moreover, we note that if HUD will ever point to the withdrawn suspensions at issue in this case as a basis for withholding approval of the appellants for HUD-insured lending, then the appellants can seek judicial review of that decision. But for now, the issue is unripe.

**D.**

The appellants make one final argument that warrants response. They claim that the case is not moot because HUD has not "reversed or repaired the economic harm experienced by them over the past several years." The argument is without merit. That plaintiffs be "made whole" is not an element of mootness. Of course, if the case involved a claim for money damages, the case would not be moot until recompense was had, absent unusual circumstances. *See, e.g.*, *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1127 (7th Cir. 1983) (case not moot where plaintiffs sought and had not yet received backpay). But the appellants here do not seek money damages, nor can they under the statute that provides their cause of action. *See* 5 U.S.C. § 702 (waiving sovereign immunity for claims "seeking relief other than money damages"). Even if we proceeded to the merits of the case and awarded the appellants all relief they seek, that would not "reverse or repair" their economic losses. Absent a legal claim for economic compensation, the desire for such does not constitute a concrete interest that keeps the case alive. *See Ashcroft v. Mattis*, 431 U.S. 171 (1977) (after plaintiff abandoned claim for damages, no longer a

No. 14-20523

live case or controversy for court to decide constitutionality of challenged statute).

### III.

The appellants have a live controversy with the government as to the pending administrative actions and lawsuit against them. Their challenge to the withdrawn temporary suspensions, however, is moot, and neither the voluntary-cessation doctrine, the collateral-consequences doctrine, nor any other argument presented in this appeal provides otherwise. The district court's judgment on the merits is VACATED, the case is REMANDED, and the district court is DIRECTED to dismiss it.