Richard WEAVER et al.

v.

**UNITED MINE WORKERS OF AMERICA et al., Appellants.**

**W. A. BOYLE et al., Appellants,**

v.

**Richard WEAVER et al.**

**Nos. 72–1747, 72–1748.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 13, 1973.

Joseph A. Yablonski, Clarice R. Feldman, Lewis D. Sargentich and Daniel B. Edelman, Washington, D. C., were on the motion, for United Mine Workers of America in No. 72–1747.

J. Gordon Forester, Jr., Washington, D. C., was on the opposition to the motion for appellants in No. 72–1748.

Al Philip Kane and Matthew A. Kane, Washington, D. C., filed a Report of Independent Counsel with Respect to the Motion.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

The action which gives rise to these consolidated interlocutory appeals [1] was instituted in 1969 by Joseph A. Yablonski and other members of the United Mine Workers of America [2] against its president, W. A. Boyle, and two other officers, George J. Titler and John Owens, for alleged violation of their fiduciary duties to the UMWA and its members. On two prior occasions we considered motions to disqualify UMWA's counsel in the action and held that neither the UMWA's retained counsel nor its house counsel could be permitted to represent its interests in the controversy because of their previous and continuing affiliations with the defendant officials in this and other UMWA litigation. [3] Since those decisions, the leadership of the UMWA has changed and the issue of representation is again before this court.

Our previous opinions delineate the legal principles which govern this issue. However, in view of the different con-

---

1. Petitions for allowance of the appeals under 28 U.S.C. § 1292(b) (1970) were granted on June 26, 1972, in No. 72–1747, and on June 28, 1972, in No. 72–1748. On September 22, 1972, the appeals were consolidated for all purposes. ,

2. Hereinafter referred to as "the UMWA."

3. Yablonski v. UMW, 147 U.S.App.D.C. 193, 454 F.2d 1036 (1971) (per curiam), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L. Ed.2d 816 (1972); Yablonski v. UMW, 145 U.S.App.D.C. 252, 448 F.2d 1175 (1971) (per curiam).

text in which the question is now presented, and because additional issues are raised concerning the realignment of the UMWA as party-plaintiff and the mootness of the underlying appeal, we believe it helpful to recount the salient facts and to state the reasons for the action we take.

I

Yablonski and other UMWA members brought suit under Section 501(b) of the Labor-Management Reporting and Disclosure Act of 1959[4] for damages and for an accounting and restitution of UMWA funds allegedly misappropriated and misspent by the defendant officers. The UMWA was also made a party-defendant and was represented originally by retained counsel who simultaneously represented Boyle in other cases in which he was charged with misconduct in office. We reversed the District Court's refusal to disqualify the UMWA's retained counsel because of the potential conflict of interest we found present.[5]

After remand to the District Court, the UMWA's general counsel and his staff entered their appearance on behalf of the UMWA. Plaintiffs' motion to disqualify these attorneys as well was denied by the District Court. We held that the UMWA's general counsel and his associates were similarly precluded from representing the UMWA because of their close association with and representation of individual defendants in other litigation.[6] In response to these decisions, the UMWA engaged counsel who are unaffiliated with any other party to the action.

Yablonski was murdered in December 1969. Of the plaintiffs, only Yablonski had requested the UMWA to sue the officers before he instituted the derivative suit as required by Section 501(b).[7] For this reason, the individual defendants and the UMWA moved to dismiss the action on the ground that the remaining plaintiffs, by failing to comply with Section 501(b), lacked standing to maintain the action. The instant interlocutory appeals were granted to review the District Court's denial of these motions to dismiss.[8]

Subsequent to the filing of UMWA's brief on appeal, new UMWA elections were held[9] and a slate of officers led by Arnold Miller replaced the incumbents.

4. 29 U.S.C. § 501(b) (1970) (hereinafter referred to as "the LMRDA"). Section 501(b) provides:

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allow a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

5. Yablonski v. UMW, 145 U.S.App.D.C. 252, 448 F.2d 1175 (1971) (per curiam).

6. Yablonski v. UMW, 147 U.S.App.D.C. 193, 454 F.2d 1036 (1971) (per curiam), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L. Ed.2d 816 (1972).

7. Note 4 *supra.*

8. As certified by the District Court, the issue on appeal is:

Does a lawsuit validly instituted against officers of a union by a member thereof, after making request upon the union to sue as required by 29 U.S.C. § 501(b), and which lawsuit is later joined by other union members who did not make such a request, survive the death of the union member who did make the request?

9. The elections were ordered by the District Court in Hodgson v. UMW, 344 F.Supp. 17 (D.D.C.1972).

Mike Trbovich and Harry Patrick, two of the plaintiffs, were elected vice-president and secretary-treasurer, respectively. Plaintiff Yablonski's son and his staff, who formerly were counsel to plaintiffs Trbovich and Patrick, became general counsel and associate counsel of the UMWA and withdrew from representation of Trbovich and Patrick. Independent counsel for the UMWA were then advised that the new general counsel would pursue the litigation for the UMWA and were requested to withdraw their appearances.

At a status call, the District Court was informed of UMWA's wish to realign as party-plaintiff in the action and to be represented by its general counsel. Independent counsel contended that representation of UMWA by the general counsel's staff would entail the same difficulty presented in the earlier appeals because of their earlier appearance on behalf of Trbovich and Patrick. The District Court concluded that since an interlocutory appeal brought by the UMWA was pending, motions for leave to realign the UMWA as plaintiff and for leave of Yablonski's staff to appear on the UMWA's behalf should be directed to this court.

In response to the District Court's ruling, the present motions were filed. The UMWA seeks (1) leave to withdraw the appeal it brought; (2) to intervene as appellee in the appeal brought by the officer-defendants; (3) leave for its new general counsel and staff to appear on its behalf; and (4) to dismiss the appeal brought by the officer-defendants

as moot in view of the UMWA's presence as plaintiff-appellee.

## II

■ We consider first the UMWA's motion for leave of its general and associate counsel to represent the UMWA in this litigation. The officer-appellants contend that only objective counsel—counsel without bias toward either the plaintiffs or the defendant officers—can satisfy the standards established by our earlier decisions in this case.[10] As the UMWA emphasizes, however, our earlier decisions concerned situations wherein the UMWA had selected as its counsel close affiliates of the very officers who were the targets of derivative actions charging breach of their fiduciary duties to the UMWA and its members.[11] We deemed "critical" the fact that counsel in each case were representing or had "represented to some extent union officers who are accused of wrongdoing in this case."[12] What primarily concerned us was the strong possibility of a conflict of interest created by those affiliations,[13] and it was in that context that we imposed on the UMWA the requirement of retaining "unquestionably independent counsel":[14]

> Where, as here, union officials are charged with breach of fiduciary duty, the organization is entitled to an evaluation and representation of its institutional interests by independent counsel, *unencumbered by potentially conflicting obligations to any defendant officer.*[15]

---

10. Note 3 *supra.*

11. In Yablonski v. UMW, 145 U.S.App.D.C. 252, 448 F.2d 1175 (1971), we set out at length the many cases in which the UMWA's outside counsel were also representing the accused officers. *Id.* at 254–255, 448 F.2d at 1177–1178. The UMWA's general counsel and some of the members of his staff, who subsequently entered their appearances, had also represented these officers. Additionally, one staff member was the son of one of the defendant officers and three attorneys were named in the complaint as having received the payments which were alleged to

have been unlawfully made by the defendant officers. Yablonski v. UMW, 147 U.S.App. D.C. 193, 197, 454 F.2d 1036, 1040 (1971).

12. Yablonski v. UMW, 147 U.S.App.D.C. 193, 197, 454 F.2d 1036, 1040 (1971) (footnote omitted).

13. *Id.*; Yablonski v. UMW, 145 U.S.App. D.C. 252, 257, 448 F.2d 1175, 1180 (1971).

14. 147 U.S.App.D.C. at 198, 454 F.2d at 1041.

15. *Id.*; (emphasis added, footnote omitted), *quoting* International Bhd. of Teamsters v. Hoffa, 242 F.Supp. 246, 256 (D.D.C.1965).

The potential for a conflict existed because of the possibility that in defending the UMWA's interests, counsel might have had to assert positions antagonistic to those dutifully urged or to be urged in defense of the individual officers. Conversely, counsel might have been deterred from aggressively representing the interests of the UMWA and its members because of a lingering allegiance to these officers.[16] The latter obstacle would have directly frustrated a primary purpose of the LMRDA to insure that labor unions be guided by the highest standards of ethical conduct.[17]

It is essential to emphasize, however, as we did in our first opinion, that "separate counsel is required *only* in a situation where there is a potential conflict between the interests of the union and those of its officers."[18] Our previous decisions were not intended to bar the UMWA from being represented by counsel of its own choice if that representation does not generate the possibility of discordant obligations.[19] We perceive

16. Thus, we noted in Yablonski v. UMW, 145 U.S.App.D.C. 252, 448 F.2d 1175 (1971):

> It is undeniable that the regular UMWA counsel have undertaken the representation of Boyle individually in many facets of his activities as a UMWA official, as a Trustee of the Fund, as a Director of the Bank owned 74% by the union. With strict fidelity to this client, such counsel could not undertake action on behalf of another client which would undermine his position personally. Yet, in this particular litigation, counsel for the UMWA should be diligent in analyzing objectively the true interests of the UMWA as an institution without being hindered by allegiance to any individual concerned.

*Id.* at 256, 448 F.2d at 1179 (footnote omitted).

This same kind of conflict concerned the court in Milone v. English, 113 U.S.App.D.C. 207, 306 F.2d 814 (1962), where the court said:

> [C]ounsel who are chosen by and represent officers charged with the misconduct, and who also represent the union, are not able to guide the litigation in the best interest of the union because of the conflict in counsel's loyalties.

*Id.* at 210, 306 F.2d at 817; *accord* Murphy v. Washington American League Base Ball Club, Inc., 116 U.S.App.D.C. 362, 324 F.2d 394 (1963) (shareholder's derivative suit); International Bhd. of Teamsters v. Hoffa, 242 F.Supp. 246 (D.D.C.1965); Lewis v. Shaffer Stores Co., 218 F.Supp. 238 (S.D. N.Y.1963) (shareholder's derivative suit).

17. In concluding that "Appellants' complaint in the instant case alleges a state of affairs existing within the leadership of the UMWA of the magnitude of that which the House Report condemned," we analyzed Congress' intent:

> 29 U.S.C. § 401 (1964) sets forth the congressional declaration of findings, purposes and policy of the LMRDA, including *inter alia* the statement that 'in order to accomplish the objective of a free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations * * *.' The legislative history of the Act makes plain that a major congressional objective was to provide union members, as well as the Government in the public interest, with a variety of means to ensure that officials of labor organizations perform the duties in accordance with fiduciary standards. . . .

145 U.S.App.D.C. at 256–257 n. 8, 448 F.2d at 1179–1180 n. 8.

18. *Id.* at 254, 448 F.2d at 1177 (emphasis added, footnote omitted). It should be noted that the ABA Code of Professional Responsibility reproves only the representation of differing interests:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

ABA Code of Professional Responsibility and Canons of Judicial Ethics, EC 5–14 (1971) (footnotes omitted).

Clearly, the converse is true that

> there is no proscription where the interest subsequently represented by the attorney is not in fact adverse to the particular interest in connection with which he was previously employed.

Annot., 52 A.L.R.2d 1243, 1246 (1954).

19. As we emphasized in our second opinion, '[t]he public interest requires that the validity of appellants' charges against the UMWA management of breach of its fiduciary responsibilities be determined in a context which is as free as possible from

no chance of such a conflict in the present effort of UMWA's new general counsel to appear on the UMWA's behalf.

Counsel's former clients, Trbovich and Patrick, together with other UMWA members, initiated this litigation as a derivative action for the benefit of the UMWA, not for the benefit of themselves individually. The UMWA possesses exclusively the financial interest at stake because any recovery in the action belongs to it. Thus, although under its former leadership the UMWA was aligned as a defendant in the controversy, the litigation since its commencement has in reality been its own.

The UMWA now seeks to reverse its stance and to align itself as plaintiff-appellee. We see no reason whatever to doubt that in view of the change occasioned by the recent UMWA elections, the UMWA's position will in fact remain consistent with that which the original plaintiff-appellees have assumed from the beginning.[20] Since the two positions coincide, counsel will undoubtedly be able to represent the UMWA without impinging on interests or confidences of their former clients.[21]

Furthermore, unlike the officer clients of the counsel we earlier disqualified,

Trbovich and Patrick have never been accused of misconduct in union matters. Consequently, the risk of conflict which existed in the earlier cases—where counsel may have been duty bound to shield the officers to the detriment of the UMWA whose interests they were also obligated to protect—simply does not exist in the circumstances presented here.

Because we find no potential conflict of interest in the representation of the UMWA by its present general counsel in this litigation,[22] there is no ground for a denial of UMWA's request. Permitting the UMWA to select its own counsel in this matter, where no likelihood of conflict is apparent, advances the policy of the LMRDA to accord unions as much independence as possible in Section 501(b) actions.[23] We accordingly grant the motion by appellant UMWA for leave of its general counsel and his staff to appear on its behalf.

### III

■■ The District Court declined to rule on the UMWA's motion to realign from party-defendant to party-plaintiff because these appeals were pending. The UMWA now moves this court for leave to withdraw its own appeal, to intervene in the appeal brought by the in-

the appearance of any potential for conflict of interest in the representation of the union itself.'
147 U.S.App.D.C. at 197, 454 F.2d at 1040, *quoting* Yablonski v. UMW, 145 U.S.App.D. C. 252, 257, 448 F.2d 1175, 1180 (1971). *See also* Annot., *supra* note 18.

20. *See* Brennan v. UMW, 155 U.S.App.D.C. 24, 475 F.2d 1293 (1973), where this court gave recognition to the change in UMWA's leadership and the resulting realignment of the UMWA's interests with that of the plaintiffs. *Id.* at 27 n. 13, 475 F.2d at 1296 n. 13.

21. As we illustrated in note 18 *supra*, the ABA Code of Professional Responsibility precludes counsel only from representing differing interests.

22. In Brennan v. UMW, 155 U.S.App.D.C. 24, 475 F.2d 1293 (1973), a situation similar to the instant case was presented. That case involved an action to terminate trustee-

ships imposed by the UMWA over certain of its districts. Trbovich and Patrick, appellants here, were intervenors in that action and were represented by the same attorneys who seek leave to appear in this case. After the elections which brought Trbovich and Patrick into the leadership of the UMWA, *see* note 9 *supra*, those attorneys moved for leave to appear on behalf of the UMWA in the appeal brought in that case. Though the issue was not decided because the motion was rendered moot by the action taken therein, we noted, "we presently see no reason under the circumstances to deny the motion . . ., the positions of the UMWA and the intervenors on this appeal now being identical. . . ." *Id.* 155 U.S.App.D.C. at 27 n. 13, 475 F.2d at 1296 n. 13.

23. *See* Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964) ; International Bhd. of Teamsters v. Hoffa, 242 F. Supp. 246, 254 (D.D.C.1965).

dividual defendants, and to dismiss the latter appeal as moot.

At the commencement of this litigation, the UMWA, under the former regime, chose to assume a defensive role. Since that time, by virtue of the elections held earlier this year, the leadership of the UMWA has changed and the newly elected officers now wish the UMWA to assume prosecution of the cause.[24] The UMWA has taken this position in the belief that the action can legally be continued in the District Court by the surviving plaintiffs and that, in the alternative, the UMWA itself may assume the litigation as party-plaintiff, thereby mooting the only issue which these appeals seek to review.

Clearly, the UMWA, like any labor organization, "has an interest in formulating its own policies, making its own decisions, and conducting its own affairs."[25] It "is free to say which side of a controversy involving a legitimate institutional interest it will take"[26] because the UMWA, like a corporation in a shareholder's derivative action,[27] retains the primary interest in the litigation. The mere fact that individual members have initiated the action does not prohibit the UMWA from reversing its position and taking the offensive in its prosecution.[28]

Although this decision is clearly within the newly-elected officers' authority,[29] the officer-appellants would have us compel the UMWA to maintain a defensive role. It simply is not the court's function to make that decision for the UMWA.[30] No less in the prosecution of litigation than in the pursuit of other affairs is a union at liberty to shape its own destiny within the boundaries set by law. Moreover, in conditioning the availability of a derivative action under Section 501 on the refusal of a union to bring the action itself,[31] Congress expressed its preference that the union prosecute a claim for breach of fiduciary duty against union officials. Allowing the UMWA to assume the prosecution of this cause would further that legislative preference. Since UMWA's present position is to prosecute vigorously the action brought for its benefit, it must be accorded that right.[32]

■■ Absent the potential for a conflict of interest or a showing of bad faith in the Union's effort to withdraw its appeal and to realign as party-

---

24. As we concluded in Part II, we see no reason to question the sincerity of this assertion.

25. International Bhd. of Teamsters v. Hoffa, 242 F.Supp. 246, 254 (D.D.C.1965); *accord* Calhoon v. Harvey, 379 U.S. 134, 140, 85 S. Ct. 292, 13 L.Ed.2d 190 (1964).

26. International Bhd. of Teamsters v. Hoffa, 52 CCH LAB. CAS. ¶ 16,634 at 23,516, 23,518 (D.D.C.1965), *quoted in* Yablonski v. UMW, 147 U.S.App.D.C. 193, 198, 454 F.2d 1036, 1041 (1971). A union "should be kept in a neutral roll when it can demonstrate no interest in the litigation beyond a shielding of officials whose activities are under attack." International Bhd. of Teamsters v. Hoffa, 242 F.Supp. 246, 253 (D.D.C.1965), *quoted in* Yablonski v. UMW, 147 U.S.App. D.C. at 198, 454 F.2d at 1041.

27. We recognized the analogy between a Section 501(b) action and a shareholder's derivative action in our first opinion in this case. 145 U.S.App.D.C. 252, 258, 448 F.2d 1175, 1181 (1971).

28. *See* In re Penn Central Securities Litigation, 335 F.Supp. 1026 (S.D.Pa.1971) (shareholder's derivative suit).

29. *See* International Bhd. of Teamsters v. Hoffa, 52 CCH LAB. CAS. ¶ 16,634 at 23,516, 23,518 (D.D.C.1965).

30. Yablonski v. UMW, 147 U.S.App.D.C. 193, 198, 454 F.2d 1036, 1041 (1971); International Bhd. of Teamsters v. Hoffa, 52 CCH LAB. CAS. ¶ 16,634 at 23,516, 23,518 (D. D.C.1965).

31. 29 U.S.C. § 501(b).

32. This is all the more apparent in light of International Bhd. of Teamsters v. Hoffa, 242 F.Supp. 246 (D.D.C.1965), where realignment by a labor union as party-defendant was permitted because it did not wish to prosecute its members' claims.

It should be noted that we foresaw the possibility in the second appeal in this case that the UMWA would want to take an active role in this action. 147 U.S.App.D.C. at 198, 454 F.2d at 1041.

plaintiff,[33] neither of which is apparent in this case, there is no reason for not allowing it to do so.[34] Accordingly, we grant UMWA's motion for leave to withdraw its appeal and remand the cause to the District Court with instructions to permit the UMWA to realign as party-plaintiff.[35] Because we are directing the District Court to permit the realignment, the issue tendered by the defendant officers' appeal—whether the action survived the death of the only plaintiff who complied with the prerequisite to a Section 501(b) suit—has become academic. Consequently, we dismiss that appeal as moot and, in accordance with United States v. Munsingwear, Inc.,[36] vacate the order of the District Court from which the appeal was taken.

So ordered.

33. *See* International Bhd. of Teamsters v. Hoffa, 242 F.Supp. 246 (union should be neutral if only interest is defending accused officers) ; Holdeman v. Sheldon, 204 F.Supp. 890 (S.D.N.Y.), aff'd, 311 F.2d 2 (2d Cir. 1962) (intervention by union as defendant disallowed due to conflict of interest presented by union's purpose of protecting defendant officers).

34. Independent counsel suggest that realignment of the UMWA as party-plaintiff may be barred by the staute of limitations. We reject this proposition in view of the clear weight of authority to the contrary. *See* Annot., 69 A.L.R.2d 562, 578–579 (1960) ; 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 6001 at 465 (1970) ; 3 J. Moore, Federal Practice ¶ 15.15 [4.–1] (1972) ; 3A *id.* ¶ 21.03[2] (1970). Furthermore, the doctrine of laches would not preclude realignment. That defense is carefully scrutinized in actions based on breach of fiduciary duties. Libby v. L. J. Corp., 101 U.S.App. D.C. 87, 247 F.2d 78 (1957). It requires a finding of unreasonable delay which will cause prejudice to the defendant. Powell v. Zuckert, 125 U.S.App.D.C. 55, 366 F.2d 634 (1966). The officer-appellants have not urged this defense in response to the motions made to this court by the UMWA and we find that such a defense would be untenable. The delay in the realignment is due solely to the fact that until the recent UMWA elections, the UMWA was controlled by the individual defendants who chose to have the UMWA defend the action. Moreover, since the individual appellants have defended the action since its commencement and no additional burden would be imposed

in defending against the UMWA in lieu of the individual plaintiffs, realignment would not appear to cause the defendant officers any prejudice.

35. In view of the realignment of the UMWA as party-plaintiff, and with particular regard to the withdrawal by the UMWA's house counsel of their appearance on behalf of the plaintiff-appellees and counsel's current representation of the UMWA in the action, it is our understanding that the plaintiff-appellees will move the District Court for leave to be dropped as party-plaintiffs. *See* Lazar v. Merchants' Nat'l Properties, Inc., 22 A. D.2d 253, 254 N.Y.S.2d 712 (Sup.Ct.1964).

36. 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). This court has long adhered to the *Munsingwear* doctrine requiring the appellate court to vacate a judgment of the district court from which an appeal is taken if that appeal is dismissed on the ground of mootness. *E. g.,* Cadillac Publishing Co. v. Summerfield, 105 U.S.App.D.C. 343, 267 F.2d 620 (1958) ; Dulles v. Nathan, 96 U.S.App.D.C. 190, 225 F.2d 29 (1955) ; Acheson v. Droesse, 90 U. S.App.D.C. 143, 197 F.2d 574 (1952) ; *see* Schoop v. Mitchell, 143 U.S.App.D.C. 405, 444 F.2d 863, cert. denied, 402 U.S. 988, 91 S.Ct. 1663, 29 L.Ed.2d 154 (1971) ; Anderson v. Morgan, 105 U.S.App.D.C. 66, 263 F. 2d 903, cert. denied, 361 U.S. 846, 80 S.Ct. 99, 4 L.Ed.2d 84 (1959). In this case, although the UMWA did not request that we vacate the judgment of the District Court, a vacatur may be entered by this court sua sponte to preserve the rights of the parties. Masszonia v. Washington, 155 U.S.App.D.C. 159, 166, 476 F.2d 915, 922 (Robinson, J., dissenting).