BROWN, Circuit Judge,
dissenting:
The question this court ought to address is whether the Alaska Native Claims Settlement Act (ANCSA) prohibits the Secretary of the Interior from placing land into trust in Alaska. The plaintiffs, several Native American tribes, argued it did not; the State of Alaska, as intervenor, argued it did. The district court agreed with the plaintiffs. But instead of resolving this critical question, the court dismisses this case as moot on the view that the Secretary’s repeal of a regulation the district court had already vacated earns a do-over under a deferential standard of review. While I acknowledge the power of this court to declare when a case is dead, the court today euthanizes a live dispute. Respectfully, I dissent.
When Akiachak initiated this suit in the district court, the tribe sought relief in the form of a declaration that the Alaska exception was invalid. Compl. Prayer for Relief ¶¶ I-III. Akiachak proffered three legal rationales for invalidity: that the Alaska exception violated 25 U.S.C. § 476(f) and (g), or the Due Process and Equal Protection Clauses of the U.S. Constitution, or the Administrative Procedure Act, 5 U.S.C. § 706(2)(a). Id. Akiachak further requested an injunction requiring the Department to implement land into trust procedures “without regard to the bar against Alaska tribes” that was then contained in the Alaska exception. All of Aki-achak’s arguments thus centered on one thing: the invalidity of the Alaska exception. Akiachak could obtain the relief it sought in this suit so long as the district court adopted at least one of its arguments for the Alaska exception’s invalidity.
In response, the Department defended the Alaska exception, arguing that the exception did not violate 25 U.S.C. § 476(f) and (g), the Constitution, or the APA. The Department took the position that although the Secretary of Interior possessed “both the authority and the discretion to take lands within the State of Alaska into trust, the Secretary is not legally obligated to do so.” Dkt. 55-1 (Cross-motion for Sum. J.) at 25. Rather, in the Department’s view, the Alaska exception was a duly promulgated regulation consistent with the demands of federal law. The Secretary could change the regulation, but need not. This argument represented a complete defense against Akiachak’s claims; if the Department prevailed, the *116 Alaska exception would remain in place unless and until the Department lifted it pursuant to the APA.
The State of Alaska intervened in the district court to join the Department in opposing Akiachak’s suit. But from the outset, Alaska made clear its interests were unique and the Department could not be expected to adequately defend them. In its motion to intervene, Alaska explained that it sought to make an argument the Department had been unwilling to make: that the Alaska exception was not discretionary at all, but compelled by ANCSA. Dkt. 18-2 (Motion to Intervene) at 15. The Department had formerly taken this view in a 1978 Associate Solicitor opinion known as the Fredericks Opinion. The Department withdrew the Fredericks Opinion in 2001, however, and was no longer willing to defend it. Id. at 15.
In seeking to intervene on the basis of its ANCSA theory, Alaska did something more than merely defend against the claim Akiachak had made: Alaska affirmatively sought relief of its own by requesting “entry of a judgment ... declaring [the Alaska exception] consistent with and compelled by the Alaska Native Claims Settlement Act.” State of Alaska’s Answer, Prayer for Relief ¶ 6 [JA 57-58] (emphasis added). This prayer for relief went a step beyond simply affirmatively defending against the claim Akiachak had made. It instead sought relief for Alaska that was separate and distinct from merely winning the suit. After all, the Department’s arguments would have been sufficient to win the suit had they been successful: so long as the Alaska exception was permissible, as the Department argued, Akiachak’s claim would fail. Alaska, however, was not satisfied with merely permitting the Alaska exception. Alaska instead claimed that a statute otherwise not at issue in this case — ANCSA—requires the Alaska exception. That argument was a new claim in this suit.
The district court rejected Alaska’s claim and its motion for summary judgment because it concluded that ANCSA did not compel the Alaska exception. Dkt. 109 (Opinion) at 19-20. That is the decision Alaska appeals today, and as to that distinct question, this case is not moot.
Rather, Alaska’s interest in its ANCSA claim is every bit as live today as it was the day Alaska intervened in the case. Here, the State asked the district court to hold that ANCSA compelled the Alaska exception. The district court disagreed and vacated that regulation, which Alaska believes the law compels. Alaska still wants — and can still obtain — the relief it has sought all along, a declaration that ANCSA compels the Alaska exception. Alaska thus has a “legally cognizable interest in the outcome” of this litigation. U.S. Parole Comm’n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).
That this outcome left Alaska with a live dispute and an appeal as of right was apparent to the district court, which entertained and granted in part Alaska’s motion to stay the decision pending appeal. Specifically, the district court enjoined the Department from taking any Alaska lands into trust while this appeal was pending because such an action would cause “irreparable harm to state sovereignty and state management of land” in Alaska.” Dkt. 145 (Opinion Granting Stay) at 12. In doing so, the district court contemplated that the Department would act as it in fact did and repeal the Alaska exception. The district court noted “it is entirely possible that the [Bureau of Indian Affairs] publishes a final rule before the D.C. Circuit issues an opinion in this case, and that the Secretary will then begin the process of taking land into trust before a decision is issued on appeal.” Id. To avoid the irreparable harm *117 that would result from that outcome, the district court granted Alaska a stay pending appeal by enjoining the Department from taking Alaska lands into trust until this court issued its opinion. That injunction is the only thing that has prevented the Department from taking Alaskan lands into trust during the pendency of this suit.
Similarly, it seems this state of affairs was apparent to the parties throughout this appeal. This case has been captioned with the Department listed as “appellees” and Alaska listed as “appellants” despite the fact that both the Department and Alaska were defendants below. While the origins of those labels arose in this Court according to the routine docketing procedures of our Clerk’s Office, any party could have moved for realignment if the party designations were incorrect. See Weaver v. United Mine Workers of America, 492 F.2d 580, 586-87 (D.C. Cir. 1973) (granting a party’s motion to withdraw an appeal, remand to district court, and realign the parties). That Alaska and the Department accepted their adverse alignment suggests they understood themselves to have adverse claims in this case. After all, if Alaska had no claim of its own at stake in this suit, there would be no reason for the Department to show up in this court and defend against Alaska’s appeal; Alaska would have only been an adverse party to the Native Alaskan appellees, and the Department’s acquiescence in the judgment would not have changed that reality. But Alaska does have a separate disagreement with the Department, which drew the Department into this court to defend itself. Although the Department primarily asserts a procedural argument aimed at kicking this suit on mootness grounds, the Department nonetheless defends against Alaska’s claim on the merits because, indeed, Alaska all along has raised a claim against which the Department has thought necessary to defend. It does not matter, as the Court suggests, that Alaska described both itself and the Department as appellants in its January 21, 2014 certification; at that time, the Department’s appeal was still pending and both parties were appealing. Nonetheless, after the Department dismissed its appeal in June of 2014, both it and Alaska were content to maintain the Department’s status as an appellee. I do not mean to place too much stock in case captioning decisions, nor need I, because the Department itself told this court that “Alaska intervened to assert that the Secretary lacked authority to acquire lands in trust status in Alaska,” and the district court “denied relief on its claim.” Federal Appellees’ Statement of Issues Filed (Jan. 27, 2014).
Today, the court says Alaska sought no affirmative relief in the district court, but I cannot agree. Alaska did seek affirmative relief by requesting a declaration that ANCSA compelled the Alaska exception. That relief is not merely the flip side of Akiachak’s claim. In fact, it was entirely possible that both Akiachak and Alaska could lose on their claims, leaving the Department’s defense as the prevailing legal theory. Under that outcome, the district court would have held that the IRA did not prohibit the Alaska exception, but neither did ANCSA compel it; the Department would have had the discretion to retain or repeal the Alaska exception. But by entering the case and raising the claim that ANCSA compelled the Alaska exception, Alaska raised a new affirmative argument and a new claim for injunctive relief. The district court determined that issue solely because Alaska raised it. Absent Alaska’s participation in the case, the district court would have had no reason to consider whether an injunction enforcing the Alaska exception would have been warranted.
Contrary to the court’s view, this position does not “conflate[ ] Rule 24(a)’s stan *118 dard for intervention as of right ... with the presentation of an affirmative claim for relief.” Maj. Op. at 108. The point is riot that the Department “may” not have adequately defended Alaska’s interests, which is what this court’s interpretation of Rule 24(a) required for Alaska to intervene as of right in the case. Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972) (citations omitted). The point is that Alaska went farther than that■ and asserted a different affirmative position than what the Department advanced. As Alaska stated in its motion to intervene, “[h]ere, the positions of Alaska and the federal defendants are not the same.” Dkt. 18-2 at 15. While the “Department of Interior withdrew the 1978 Fredericks Opinion stating that ANCSA prohibits the Secretary from taking land into trust in Alaska ... Alaska supports the reasoning of the Fredericks Opinion and maintains that ... Indian country [susceptible to trust status] does not exist in Alaska.” Id. Thus, “[w]ithout intervention, the full ventilation of these issues cannot take place.” Id. Alaska made clear not only that it possessed certain interests that the Department “may” not adequately defend (“the State’s interest ... in ensuring the consistent and uniform application of state law” and “protecting its territorial jurisdiction throughout the state”), but also that it intended to assert an entire argument the Department had abandoned.
The court doubts that Alaska’s new argument rose to the level of a “claim to relief’ because it says the words “compelled by” are insufficient to establish a claim. Maj. Op. at 109. But the court misconstrues Alaska’s claim. Alaska established an affirmative claim to relief by seeking “entry of a judgment ... declaring [the Alaska exception] consistent with and compelled by the Alaska Native Claims Settlement Act.” State of Alaska’s Answer, Prayer for Relief ¶ 6 [JA 57-58] (emphasis added). Alaska’s claim sought a declaratory judgment holding that the • Alaska exception was not merely “consistent with” ANCSA (as the Department argued) but compelled by ANCSA. If ANCSA clearly compels the Alaska exception — as Alaska believes it does — the district court could have declared that fact in its judgment, thus affording Alaska the affirmative relief it sought. The court suggests that only the Administrative Procedure Act could have supplied a basis for any affirmative claim Alaska might have pled, but even if that is true, the Department was free to challenge Alaska’s claim for relief on the merits. In fact, the Department did exactly that, arguing that ANCSA left to the Secretary’s discretion whether to take land into trust for Alaskan tribes.
Nor does it matter that the Department’s view of the case had not been fully fleshed out in court filings at the time Alaska filed its answer. See Maj. Op. at 109. Alaska knew the Department no longer defended the Alaska exception as being compelled by ANCSA because the Department had publicly rescinded the Freder-icks Opinion (which espoused that view), stating that “there is substantial doubt about the validity of the conclusion reached in” that opinion. Appellant’s App. 265. In any event, the Department’s answer to Akiachak’s complaint raised no claim that the Alaska exception was compelled by ANCSA, so Alaska was free to raise that affirmative claim itself.
To reach its conclusion, the court relies on a series of purportedly analagous cases that are actually inapposite. The court looks to Akiachak’s claim — seeking the invalidation of the Alaska exception' — and declares the case moot because the challenged regulation no longer exists. Maj. Op. at 105-06. But the relevant claim here is not Akiachak’s but Alaska’s. Alaska’s *119 claim is still live because Alaska’s claim has always been that the Alaska exception must remain law. Alaska still has something to litigate even when the exception is no longer in force because Alaska seeks a declaration that the exception must be the law. For this reason, the court’s reliance on Diffenderfer, Larsen, and National Black Police Ass’n is misplaced. Maj. Op. at 105-06. In those cases, a party sought to invalidate a law, policy, or regulation that no longer existed and that was unlikely to be reenacted. Alaska’s relief is still possible where the relief sought in Diffenderfer, Larsen, and National Black Police Ass’n was not.
The court relies on National Football League because of the same misunderstanding. Maj. Op. at 106. There, an intervening event (the conclusion of the 1993-94 professional football season) made all of the relief sought in the complaint unobtainable, and therefore, the case was moot. The same would be true here if the relief sought in Akiachak’s complaint were the only relief sought in this case. But Alaska’s counterclaim raised a new issue, which no intervening event has rendered moot. Mootness has been prevented here because there is “at least a capacity for a declaration of a legal right concerning a future projection of the actual dispute that precipitated the litigation.” Maj. Op. at 107, (quoting Alton & S. Ry. Co. v. Int’l Ass’n of Machinists & Aerospace Workers, 463 F.2d 872, 879-80 (D.C. Cir. 1972)). That holds true because the “dispute that precipitated the litigation” in the present context is the dispute Alaska alleged when it intervened below.
At the risk of excessive repetition, the same error plagues the court’s reliance on Wyoming v. USDA, 414 F.3d 1207 (10th Cir. 2005). Maj. Op. at 112. There again, the case became moot because “[t]he portions of the [regulation] that were substantively challenged by [the plaintiff] no longer existed.” Id. at 1212. That situation would be analogous to the present circumstances if Akiachak were the party seeking to appeal or if the only claim to be appealed was what Akiachak stated in the original complaint. But Alaska raised a separate claim here, and that claim is the subject matter of this appeal. Moreover, Alaska’s claim survives the Department’s regulatory repeal because Alaska seeks a declaration that the regulation is required by law. That relief is still possible despite the repeal, unlike the relief sought in Wyoming.
■ From here, the errors compound because the court rests its opinion on the premise that the Department mooted Alaska’s claim when it repealed the Alaska exception. But that action did not— indeed, could not — have caused such a catastrophic result. There are two problems with the court’s approach. First, it treats the Department’s repeal of a vacated regulation as a meaningful event. In fact, the repeal was meaningless because the district court had already severed and vacated the Alaska exception. Dkt. 130, (Remedy Opinion) at 3-9.' The district court took that approach because it was clear to it that “the deficiencies of the Alaska exception [we]re fatal” such that “the Secretary could not promulgate it again on remand.” Akiachak Native Comm. v. Jewell, 995 F.Supp.2d 1, at 6 (D.D.C. 2013). Accordingly, the district court rejected the possibility of remanding for a curative rulemak-ing and instead “sever[ed] and vaeate[d]” the Alaska exception from the rest of 25 C.F.R. § 151.1. See id. at 7. The Department’s subsequent curative rulemaking was an absurdity at best; it created no legal effect because the Alaska exception was already vacated and therefore unenforceable. At worst, the Department’s curative rulemaking effected a strategic bait- and-switch on Alaska, allowing the Depart *120 ment (with this court’s authorization) to force Alaska back to district court to start its claim again, but with a deferential standard of review applied to the new rulemak-ing under Chevron. Either way, when the court relies today on the, absence of the Alaska exception to demonstrate the mootness of this case, what the court really means is that the district court mooted this case when it vacated the Alaska exception. That is nonsensical, of course, because the decision of the district court to vacate the Alaska exception is the very decision Alaska is challenging here and from which Alaska is entitled to an appeal as of right.
Second, it is odd to think (as the court must) that the Department could moot Alaska’s claim by doing precisely what Alaska has sought to prevent from the moment it intervened in this suit. Alaska has tried all along to prevent the repeal of the Alaska exception; it hardly moots Alaska’s case to have the Department formalis-tieally (if meaninglessly) do exactly what Alaska feared.
In treating the Department’s repeal of the Alaska exception as a meaningful decision that has mooted this case, the court falls prey to the Administration’s thimbler-ig. Of course, it was in the Department’s best interest to retract the vacated Alaska exception in a rulemaking and thus force, if it could, Alaska to attack that rulemak-ing rather than merely to appeal a decision of a district court. Why? Because in attacking the rulemaking directly, Alaska will be forced to confront a standard of review highly deferential to the Department. The Department will run the table.
That the mootness problem the Department urges is illusory becomes even clearer when the court suggests Alaska could bring this case and avoid a mootness problem by simply returning to the district court and raising the same claim against the same party in a new case. Maj. Op. at 113-14. On its face, that recommendation is confirmation that the case is not moot but has only hit a procedural roadblock thrown up by the Department and endorsed by this court. In no other case on which the court relies could the supposedly aggrieved party have cured its mootness problem by simply starting over again. When an intervening event truly moots a case, no promised “do-over” can save it.
Following this case, Alaska will have two options: either challenge the new rule afresh in district court or wait for the Department to take lands into trust and then challenge that administrative decision directly. Both of these approaches disadvantage Alaska compared to the present litigation. If Alaska awaits the administrative decision, it will not only face a deferential standard of review favoring the Department but also the general reluctance of courts to disturb administrative actions retroactively. But see U.S. v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (Chevron deference only applies where Congress has delegated authority to an agency); cf. Final Appellant’s Br. 47. This is especially true if the Department chooses to take land into trust, which will introduce the reliance interest of tribal parties into any balancing that a future court may undertake. It is enough to say that Alaska will never be in the same posture it is today.
In any event, the result the court suggests is contrary to judicial economy and basic fairness. Alaska did the right thing by intervening here, in a case in which the subject matter being contested related substantially to the State’s interests. Alaska sought to promote judicial economy by locating itself with other interested parties in the same court and as part of the same proceedings, adding its related claim to the others already being litigated. Today this *121 court undoes that sensible effort, only to recommend that the gathered parties disband and start the same dispute over again in district court. It is as if the groom is at the altar, the bride is in the vestibule, and friends and family gathered in the pews, but the court has decided to reschedule the wedding for a few days from now in a different church down the road. The litigants, a state and a federal agency, are taxpayer-supported entities. The result is waste — pure and simple.
To make matters worse, the court’s suggestion that the parties begin afresh in district court carries real consequences for Alaska, consequences that threaten the State with “irreparable harm” according to the district court. Dkt. 145 (Opinion Granting Stay) at 12. Currently, the Department is operating under a stay that prevents taking Alaskan land into trust. That stay protects Alaska while this appeal is pending, but upon issuance of the court’s decision today, that stay will be lifted and the Department will be free to take Alaskan lands into trust. Alaska can hope, of course, that another district court will see fit to enjoin the Department from doing so while Alaska starts over. But having obtained a stay once does not guarantee extraordinary relief will be granted again. See, e.g., Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (“A preliminary injunction is an extraordinary remedy never awarded as of right.”). By making the Department’s rulemaking the pivotal fact in its mootness determination, the court has arguably decided the merits sub silentio. And that decision necessarily affects another court’s calculus in deciding whether injunctive relief is appropriate.
The court says Alaska’s argument amounts to saying “the district court effectively eliminated the agency’s power to take any action that could moot the case.” Maj. Op. at 112. Embedded in that statement is the assumption the government can always choose to end a case when it wishes, for all parties. But in intervening, Alaska established that it had interests at stake in this case that were different from those of the Department. Nothing says the Department, in addition to being able to effectively “settle” with Akiachak by acquiescing to the tribe’s claims, should also be able to acquiesce on behalf of Alaska, dissipating Alaska’s distinct interests in the case. Indeed, Alaska’s concern is not about the agency’s power to moot the case; it is about the agency’s power, period. The purpose of the case or controversy requirement is to reserve our adversarial judicial process for disputes between real adversaries. Today the court endorses the opposite approach, suggesting the government always retains the power to moot a case, even when its actions exacerbate rather than alleviate the grievance of another party. We have adversaries before us today seeking to have a live controversy resolved. This case is not moot, and I would hear it.
We should not deceive ourselves about the disservice we do the parties in not resolving this ease on the merits. The issues presented are of great significance. The district court’s decision and the Department’s actions may very well affect Alaska’s sovereignty — infringing its jurisdictional hegemony and its territorial integrity. At the very least, the potential establishment of Indian Country in Alaska arguably runs counter to the bargain the State struck with the federal government (and paid for handsomely) when ANCSA was enacted. See Donald Craig Mitchell, Alaska v. Native Village of Venetie: Statutory Construction or Judicial Usurpation? Why History Counts, 14 Alaska L. Rev. 353 (1997). After all, the Department’s present view of ANCSA is a recent invention; at the origination of this very *122 suit the Department held a view contrary to what it espouses now. The issues of statutory interpretation at play here can hardly be of obvious advantage to the Department given that it took the administration well over thirty years to see things this way, and it is not clear Congress delegated any interpretive authority to the Secretary. See 43 U.S.C. §§1601, 1603, 1618(a). ANCSA has been recognized as a significant legislative accomplishment, bringing disparate interest groups together — the State of Alaska, Native peoples, the federal government — to create a new system for land recognition that explicitly repudiated and replaced the paternalistic reservation model implemented in the lower continental states. See Alaska v. Native Village of Venetie Tribal Gov’t, 522 U.S. 520, 523-24, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998). The Department’s new view of ANCSA runs counter to that historical narrative, and the express intentions of Congress. See Address by Hon. Ted Stevens, United States Senator, before a Joint Session of the First Session of the Twentieth Aaska State Legislature (Apr. 2, 1997) in Senate & House J. Supp. No. 9 (1997). Whether the Department’s view is accurate is a question deserving serious consideration. I, for one, would have considered that question today.