MILLETT, Circuit Judge,
concurring:
The issue in this case sounds simple: can a union file suit as a plaintiff to enforce the fiduciary duties Congress declared in 29 U.S.C. § 501? But the answer is hard, lying at the intersection of important questions about the binding reach of circuit precedent, statutory construction, and constitutional avoidance. At bottom, I agree that Weaver v. United Mine Workers of America, 492 F.2d 580 (D.C. Cir. 1973) (per curiam), directs our disposition of this case, for the reasons so well explained by the majority opinion. I write separately to explain further my conviction that Weaver controls notwithstanding the arguments made in the dissenting opinion, and yet to acknowledge the force of the arguments against Weaver’s, correctness, as well as to note the potential constitutional problems the issue raises.
*979 A
A panel of this court is bound to adhere to the holdings of prior circuit precedent even if we might resolve the case differently were we to decide it in the first instance. See United States v. Kolter, 71 F.3d 425, 431 (D.C. Cir. 1995) (We are “bound by [an earlier] decision even if we d[o] not agree with it[.]”); cf. Hilton v. South Carolina Public Railways Comm’n, 502 U.S. 197, 198, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (The principle of stare decisis is “most compelling” in statutory interpretation cases.).
Weaver’s holding alone would seem to end this case because this court explicitly ruled there that a union may, on its own, prosecute as plaintiff an action to enforce the federal rights created by 29 U.S.C. § 501(a). Weaver, 492 F.2d at 586-587. The union in this case seeks to do the same thing: to prosecute an action to enforce the rights under Section 501(a) as the sole plaintiff. Asked and answered by Weaver.
And Weaver’s influence does not stop there. As the majority opinion notes, we are bound not just by the bottom-line holding of Weaver, but also by “those portions of the opinion necessary to that result.” Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The analysis on which the Weaver court predicated its holding seals the precedential deal.
Specifically, the Weaver court held that the union could be the sole plaintiff enforcing rights conferred by Section 501(a) by analyzing the statutory structure, and explaining how, under Section 501, the union “retain[ed] the primary interest in the litigation.” 492 F.2d at 586. That was not just a procedural judgment. Rather, Weaver declared specifically that, given the union’s desire “to prosecute vigorously the action brought for its benefit, it must be accorded that right.” Id. (emphasis added). The only “right” the Weaver court could have recognized in that sentence was a right of action under Section 501(a). That, in fact, is what Weaver tells us in the preceding two sentences that describe “that right”:
Congress expressed its preference that the union prosecute a claim for breach of fiduciary duty against union officials. Allowing the [union] to assume the prosecution of this cause would further that legislative preference.
Id.; see also id. (“The mere fact that individual members have initiated the action does not prohibit the [union] from * * * taking the offensive in its prosecution.”). Thus, contrary to the claim in the dissenting opinion, see Dissenting Op. at 988, the Weaver court did not just have “thoughts” about whether Section 501 confers a right of action on unions; Weaver expressly acknowledged and directly enforced the union’s “right” “to prosecute * * * the action” as plaintiff, 492 F.2d at 586.
Finally, unless the Weaver court specifically determined that the union had the lawful authority to independently enforce the rights conferred by Section 501(a), there would have been no basis for Weaver’s separate holding that arguments about whether other would-be plaintiffs could sue were moot. 492 F.2d at 587 (“[Wjhether the action survived the death of the only plaintiff who complied with the prerequisite to a Section 501(b) suit [ ] has become academic.”); id. at 586 (noting union argument that, if the union “itself may assume the litigation as party-plaintiff,” that would “moot” the dispute over whether other plaintiffs could continue the lawsuit). There thus is nothing “lurkfing],” see Dissenting Op. at 988, about Weaver’s express holding that the union’s right to bring suit as plaintiff legally moots the question of whether other would-be plaintiffs can prosecute the action.
The dissenting opinion would cast all of that aside for two reasons. First, that opin *980 ion describes Weaver as “completely miss[ing] the issue of whether Section 501 creates an implied cause of action for unions.” Dissenting Op. at 988. But Weaver specifically discussed how the union’s “right” to sue “further[ed] th[e] legislative preference,” 492 F.2d at 586. That the panel did not go on to “cite any precedent related to finding implied causes of action,” Dissenting Op. at 988, or to use a particular — and at that time rarely used — linguistic formulation is irrelevant to whether the prior panel holding binds us.[1]
Second, the dissenting opinion claims that Weaver’s holding was limited to the narrow factual circumstance before that court: whether a union could “start on one side of a Section 501 case and then— midway through — switch to the other side.” Dissenting Op. at 987. It certainly is true that the facts of Weaver differed from those here. Thankfully, we do not often encounter cases where the defendant orchestrates the murder of the plaintiff, has a change of heart, and then seeks to substitute itself as plaintiff in the litigation. But those tragic facts played no role in the Weaver court’s controlling legal analysis as to why the union could sue as plaintiff. Weaver instead relied upon the legal “right” of the union to prosecute the action, because it had the “primary interest in the litigation” and because “Congress expressed its preference” for that action in the design and structure of the statute. 492 F.2d at 586.
Indeed, what else could Weaver have meant? Surely it does not mean that persons who otherwise lack a right of action to enforce statutorily conferred rights can suddenly acquire such a right if they just murder the proper plaintiff and then step into the vacuum to prosecute the suit on their own behalf. I am not wont to impute such a bizarre holding to a prior.panel.
B
Were it not for Weaver, I might very well agree with the dissenting opinion that no right of action can be implied here. While Judge Tatel’s concurring opinion ably articulates the best arguments for implying such a right, in my mind four considerations weigh heavily against that conclusion.
First, Congress spelled out in Section 501 precisely the cause of action it wanted to create, along with specific conditions and limitations on the action. I am not aware of any case in which either this court or the Supreme Court has implied a right of action for one party where Congress expressly bestowed that right on a different party and on different terms. Given that the bottom-line inquiry is whether “evidence anywhere in the text * * * suggests] that Congress intended to create a private right,” Alexander v. Sandoval, 532 U.S. 275, 291, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the better course in this case would be to assume that Congress said what it meant and meant what it said when it specifically designed the cause of action it thought best to enforce Section 501(a).
Second, at every turn, the statutory text weighs against judicially implying a cause of action. To begin with, it is not as though Congress just overlooked unions as potential parties. Unions — “labor organizations” — are referenced all over Section 501. Section 501 reflects a deliberate effort by Congress to declare fiduciary duties owed to unions, and a corresponding right to enforce them that was consciously not vested in the unions, but was designed to. be entirely separate and independent of those organizations.
On top of that, it seems textually impossible to shoehorn union-plaintiffs into the *981 statute as Congress wrote it. Section 501(b) repeatedly refers to the authorized plaintiff as a “member” of the labor organization in describing who may sue and how, as well as who can obtain attorneys’ fees and costs. 29 U.S.C. § 501(b). Needless to say, a union is not a member of itself. The statute also requires a plaintiff, before filing suit, to establish that the union itself “refuse[d] or fail[ed] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization.” Id. The suit that Section 501(b) references there is a suit by the union under extant state-law causes of action — such as fraud, breach of contract, breach of fiduciary duty, and unjust enrichment, all of which long predated Section 501. See, e.g., H.R. Rep. No. 741, 86th Cong., 1st Sess. 81 (1959), reprinted in 1 NLRB Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 839 (1959). Suing unions, by definition, cannot establish their own failure to bring suit.
To allow unions to sue as plaintiffs under Section 501, courts would have to shrug off those textual preconditions. But that would amount to defying, not implying, a statutory cause of action.
Third, there was good reason for all the procedural fences Congress erected against unions as plaintiffs: the whole point of Section 501 was to empower individuals to combat union corruption. See Mallick v. International Brotherhood of Electrical Workers, 749 F.2d 771, 777 (D.C. Cir. 1984) (describing Congress’s attempt “to end ‘autocratic rule by placing the ultimate power in the hands of the members, where it rightfully belongs, so that they may be ruled by their free consent, [and] may bring about a regeneration of union leadership’ ”) (quoting 105 Cong. Rec. 6472 (1959) (remarks of Sen. McClellan), reprinted in 2 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1099 (1959)).
Allowing the union itself to take over enforcement of Section 501 rights would put back into the union’s hands the very authority Congress sought to confer on individual members, and would empower corrupt unions to throw the Section 501 litigation or enter into sweetheart settlements. Weaver itself seemed to acknowledge that risk because the court went out of its way to find that the union’s efforts to proceed as plaintiff in that case were not in “bad faith” and did not entail any “conflict of interest.” 492 F.2d at 586. Indeed, suspicions about unions absolving corrupt officials are presumably what led Congress to outlaw “general exculpatory” union bylaws and resolutions that would otherwise purport to relieve officers of the fiduciary duties that Section 501(a) declared. 29 U.S.C. § 501(a). It would make little sense to empower unions to accomplish through litigation tactics what Congress forbade through other union processes.[2]
Fourth, the statute requires would-be plaintiffs to obtain leave of the court “for good cause shown” before filing suit. 29 U.S.C. § 501(b). That provision appears similar to certificates of appealability that many habeas petitioners must obtain before filing suit. See 28 U.S.C. § 2253(c). The certification procedure in habeas cases is jurisdictional. See Gonzalez v. Thaler, - U.S. -, 132 S.Ct. 641, 649, 181 *982 L.Ed.2d 619 (2012). If Section 501(b)’s pre-litigation certification likewise is “jurisdictional” — as Congress labeled it in the heading to Section 501(b)- — then implying a right of action that bypasses Section 501(b)’s “good cause” limitation (as the record suggests the union did here) would require courts to create their own jurisdiction under Section 501, not just a right of action. Courts absolutely cannot do that. See Kontrick v. Ryan, 540 U.S. 443, 452, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (“Only Congress may determine a lower federal court’s subject-matter jurisdiction.”) (citing U.S. Const., Art. Ill, § 1).
Accordingly, if we were writing on a clean slate, the relevant indicia of statutory intent would, in my view and as well explained by the dissenting opinion, weigh heavily against implying a right of action for unions to prosecute lawsuits under Section 501.
C
Having said all of that, one thing would still give me pause about denying a union the right to sue under Section 501: Unless the union can sue, the enforcement scheme that Congress devised could potentially run into some constitutional headwinds.
For starters, Congress is clear that the fiduciary duties in Section 501(a) belong to the union, and to that end provides that any recovery also goes to the union itself. See, e.g., 29 U.S.C. § 501(a) (declaring duties of union officials and agents to “hold [the union’s] money and property solely for the benefit of the organization and its members”); id. § 501(b) (authorizing suit “to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization”). The ability of Congress to empower a third party— someone completely outside of the union’s control — to independently enforce and definitively adjudicate the union’s own rights would seem to raise due process concerns. Cf. Taylor v. Sturgell, 553 U.S. 880, 896, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (“[A] special statutory scheme may ‘expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process’ ”) (quoting Martin v. Wilks, 490 U.S. 755, 762 n. 2, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989)) (emphasis added) (alterations omitted).
It bears noting, in that regard, that individual member suits under Section 501(b) do not map exactly onto the shareholder derivative model referenced in Weaver, 492 F.2d at 586 & n. 27, and Judge Tatel’s concurrence, Concurring Op. at 976. That is because stockholders actually own a portion of the corporation and thus have individual property interests in corporate breaches of fiduciary duties. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 318, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Shareholders may bring a derivative suit because, “[w]hile their stock holdings are small, they have a real interest[.]”); see also 13 Fletcher Cyclopedia of the Law of Corporations § 5972 (2015) (“[0]ne who does not own shares in a corporation is not qualified to bring a derivative action in its name.”).
Individual union members, by contrast, have no property interest in the union, and the broad fiduciary duties that Section 501(a) vindicates generally run to the union and union membership as a whole, rather than to individual union members.[3] *983 Construing the statute to permit unions to vindicate their Section 501(a) rights themselves should they choose to do so might arguably ameliorate the constitutional concern. See Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 628-529, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (“Federal statutes are to be so construed as to avoid serious doubt of their constitutionality.”) (quoting International Ass’n of Machinists v. Street, 367 U.S. 740, 749-750, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961)).
On top of that, the ability of individual union members to sue in federal court to enforce the union’s legal rights — based on injuries inflicted only on the union or the membership as a whole and to obtain a recovery that runs 100% to the union— may raise an Article III standing question. See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (“The Art. Ill judicial power exists only to redress or otherwise to protect against injury to the complaining party.”) (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) (emphasis in Vermont Agency). However, construing the statute to treat the union as the real party in interest and the individual litigant as something akin to an assignee for collection could — perhaps—reduce those concerns. See Sprint Communications Co. v. APCC Services, Inc., 554 U.S. 269, 285, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) (“Lawsuits by assignees * * * are ‘cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.’ ”) (quoting Vermont Agency, 529 U.S. at 777-778, 120 S.Ct. 1858).
In sum, I find the statutory construction question legally betwixt and between, with text, structure, and purpose pointing against recognizing an implied right of action, and the principle of constitutional avoidance pointing in the other direction. Weaver, however, forestalls that difficult debate for now.

. This court first employed the "implied cause of action” phraseology three years after Weaver. See Mason v. Belieu, 543 F.2d 215, 220 (D.C. Cir. 1976).

. Judge Tatel's concurring opinion suggests that the union could equally frustrate an individual member’s suit under Section 501 by collusively litigating its state-law cause of action. See Concurring Op. at 978. But Section 501(b)’s "good cause” standard protects the union member's right to bring a federal suit to enforce federal rights if litigation shenanigans by the union in state court trenched upon the rights and duties declared by Section 501(a).

. See 29 U.S.C. § 501(b) (recovery is solely for the benefit of the organization as a whole); see, also, e.g., Agola v. Hagner, 556 F.Supp. 296, 301 (E.D.N.Y. 1982) (complaint under Section 501 failed to state a claim because the suit was "for the benefit of individual plaintiffs and not for the benefit of a labor organization”); cf. Goolsby v. City of Detroit, 419 Mich. 651, 358 N.W.2d 856, 863 (1984) (common-law duty of fair representation means that the union "must be faithful to each mem *983 ber, to be sure, but * * * must be faithful to all of the members at one and the same time”).